**REEBER v. ROSSELL et al.**

United States District Court
S. D. New York.
July 3, 1952.

Rogge, Fabricant, Gordon & Goldman, New York City, Murray A. Gordon, New York City, for plaintiff.

Myles J. Lane, U. S. Atty., New York City (Richard P. Donovan, Asst. U. S. Atty., New York City, Thomas V. O'Keefe, Attorney, Veterans Administration, New York City, of counsel), for defendants.

McGOHEY, District Judge.

Both sides move for summary judgment. The plaintiff's motion is denied. Defendant's motion is granted.[1]

---

1. A similar result was recently reached in Fass v. Gray (Candell v. Gray) 197 F.2d 587, by the Court of Appeals for the District of Columbia Circuit. However, I have thought it necessary, in view of the arguments urged here, to treat the question fully.

Plaintiff is an honorably discharged veteran of World War II who began to work at the Brooklyn Regional Office of the Veterans Administration on or about May 28, 1946. Defendant Rossell is Regional Director of the Second United States Civil Service Region of the United States Civil Service Commission. The other two defendants are officers of the Brooklyn Regional Office of the Veterans Administration.

Plaintiff seeks a judgment declaring defendants' action in separating him from his employment to be null, void and illegal in violation of the Act of 1912, 5 U.S.C.A. § 648, and the Veterans' Preference Act of 1944, 5 U.S.C.A. § 861. He also asks for an injunction against his removal, separation or reduction in rank or salary.

By notice dated April 19, 1950, which superseded an earlier like notice, plaintiff was informed that because of a reduction in force his active duty would be terminated on May 19, 1950. Plaintiff's appeal from this notice was denied by the Second Civil Service Region. The letter from defendant Rossell so notifying the plaintiff was dated May 10, 1950, and it stated that under the existing Civil Service Commission Regulations [2] governing reductions in force plaintiff, as a veteran with competitive civil service status and an efficiency rating of not less than "Good," was "entitled * * * to reassignment to a continuing position within the commuting area for which you are fully qualified provided there is such a position which is either vacant or held by an employee in a lower retention subgroup." The letter went on to say that the Veterans Administration had not violated any of plaintiff's rights under the regulations in not

assigning him to another position even though there were positions in the commuting area for which he met the basic qualifications but for which he was not fully qualified—that is, which he could not fill without additional training.

Plaintiff appealed this determination to the Civil Service Commission and on May 16, 1950, commenced the instant action. A temporary injunction granted on June 8, 1950,[3] is still in effect. Thus the plaintiff continues to be employed by the Veterans Administration although, according to the affidavit of its present Personnel Officer, "there has been no salary appropriation from which to pay him and his salary is being met by refraining from filling necessary positions in the office where he is employed and by refraining from promoting deserving employees." The Civil Service Commission denied plaintiff's appeal on September 8, 1950.

There is no issue here as to any material fact.

Plaintiff claims that he has an absolute right to be retained; that under the Acts of 1912 and 1944 he may not because of a reduction in force be separated since he has competitive civil service status and an efficiency rating of good or better. This contention squarely contravenes the regulations under which the defendants acted. The question then is whether these regulations are valid, because it is not claimed that they were violated or improperly applied to the plaintiff.

 Plaintiff contends initially that the decision granting the preliminary injunction upheld his position; that it is the law of this case and thus requires summary

---

2. "Part 20—Retention Preference Regulations for Use in Reductions in Force.
 "Actions and Notice to Employees
 * * * * *
 "§ 20.9 Actions—(a) In general. Employees who cannot be retained in their positions because of a reduction in force shall be reassigned to continuing positions, furloughed, or separated. Furloughs shall not extend beyond the term of appointment and shall in no case exceed 1 year from the date of notice.
 "(b) Reassignments to continuing positions. Reassignment is required in

lieu of separation or furlough, within the local commuting area, without interruption to pay status whenever possible, to an available position for which the employee is fully qualified, unless a reasonable offer of reassignment is refused. No displacement will be required to permit the reassignment of an employee unless such employee is fully qualified to perform the duties of the position in question. * * *" 15 Fed.Reg. 49.

3. Reeber v. Rossell, D.C.S.D.N.Y., 91 F. Supp. 108.

judgment in his favor. I disagree. The judge who granted the preliminary injunction said in his opinion, 91 F.Supp. at page 112, "Without going too deeply into the merits of this action, it is apparent that the causes of action herein sufficiently allege a breach of the above unambiguous law * * *." The pertinent question there before the court was whether the injunction power should be used to protect the plaintiff's rights and position pending final determination of the issues on the merits. The judge therefore was undoubtedly correct in saying that determination of that limited question did not require "going too deeply into the merits". The motions before me, however, require full consideration. And so I think I am not absolved by the "law of the case" doctrine from fulfilling that requirement. It seems to follow that the earlier decision is not controlling.

Proceeding to the merits, our starting point is the following relevant provision of the Act of 1912:

"The Bureau of Efficiency shall * * * establish a system of efficiency ratings for the classified service in the several executive departments in the District of Columbia * * *. In the event of reductions being made in the force in any of the executive departments no honorably discharged soldier or sailor whose record in said department is rated good shall be discharged or dropped or reduced in rank or salary." [4]

█ Since the 1912 Act was limited by Congress in terms to employees of the executive departments in the District of Columbia, the plaintiff, a New York employee of an independent agency, can not derive any rights from it. What the plaintiff claims, I think inaccurately, to be "unequivocal rights afforded * * * by the Act of 1912" come to him only by action of the executive, not the legislative, branch of the government. Therefore, the scope and limitations of those "rights" must be determined by reference to the relevant Executive Orders and Civil Service Commission rules and regulations.

The benefits of civil service reduction in force retention preference were first extended to veterans circumstanced as the plaintiff by Executive Order 3801, March 3, 1923, which added the following paragraph to Civil Service Rule XII:

"5. In harmony with statutory provisions, when reductions are being made in the force, in any part of the classified service, no employee entitled to military preference in appointment shall be discharged or dropped or reduced in rank or salary if his record is good."

In August, 1924, the Civil Service Commission issued its Form 1481, *Veteran Preference*, which, after quoting the foregoing paragraph 5 of Rule XII and the above provision of the 1912 Act, said: "Reduction may be made to conform to the grade or character of work *and the employee dropped when there is no further need for his services.*" (Emphasis added.)

It thus appears that although paragraph 5 is in substantially the same language as the Act of 1912 to which it refers, the executive branch (the Commission) very shortly after the promulgation of paragraph 5 interpreted it as not having granted to a veteran with a rating of "good" an absolute right to be retained in the event of a reduction in force. All that he was considered to have been granted was an absolute retention preference over non-veterans with whom he was in competition, that is, those who were engaged in the same line of work.

This was made perfectly clear by the revised language of paragraph 5 which was promulgated by Executive Order 8705, March 5, 1941, effective November 7, 1940: [5]

4. Aug. 23, 1912, c. 350, § 4, 37 Stat. 413. The section formerly appeared as 5 U.S. C.A. § 648, but was repealed by the Performance Rating Act of 1950, Pub.L. No. 873, 81st Cong., 2d Sess., § 11(1), Sept. 30, 1950.

5. 3 C.F.R. pp. 907, 908, Cum.Supp.1943, codified in 5 C.F.R. § 12.5, Cum.Supp. 1943

"In harmony with statutory provisions, when reductions are being made in the force, in any part of the classified service, no employee entitled to military preference in appointment shall be discharged, dropped or reduced in rank or salary before any employee not entitled to military preference *in competition with him* if his record is good; nor shall any classified employee entitled to military preference in appointment be discharged, dropped, or reduced in rank or salary before any employee not entitled to military preference in competition with him if his efficiency rating is less than good but better than, or equal to, that of any such non-preference employee." [6] [Emphasis supplied.]

Although this revision constitutes the first unequivocal statement of it, the concept that a veteran rated "good" should in the event of a reduction in force be preferred only over those non-veterans with whom he was in competition had been long before adopted by the executive branch of the government.

Thus, Executive Order 4240, June 4, 1925, which applied to some [7] employees who were protected by the provisions of the Act of 1912 provided:

"Executive Order of March 3, 1923, will be construed to require that in selecting employees to be demoted or separated on account of any reduction of working forces honorably discharged soldiers, sailors, and marines, and the widows of such, and the wives of injured soldiers, sailors, and marines,

who themselves are not qualified for positions in the Government service, will be placed at the top of the lists of *competing* employees, in the order of their ratings, provided they attained for the last rating period an efficiency rating of not less than 80; and they will be retained in existing status, if their record in respect to deportment, attitude and attendance is satisfactory, in preference to all other persons with whom they are respectively in competition." [Emphasis supplied.]

With regard to employees in the classified service [8] generally, that is, not only those within the scope of the Act of 1912 but those within the broader scope of paragraph 5 as well, the Commission's Form 1481 of May, 1932, in dealing with "Preference in Reduction of Force" provided in part:

"If the position held by an employee entitled to veteran preference is abolished and there is no *like position* to which he can be transferred, a Government establishment is not required to remove an employee not entitled to preference merely for the purpose of retaining the veteran." [Emphasis supplied.]

On April 13, 1939, in a letter to the Chairman of the House Committee on the Civil Service, President Harry B. Mitchell of the Civil Service Commission said: [9] "As between employees *engaged on similar work,* veterans are at present given preference in retention in the event of reduction of force." [Emphasis supplied.]

6. Executive Order 8587, November 7, 1940, contained identical language with regard to preference employees rated good. 3 C.F.R. pp. 824, 830, Cum.Supp.1943

7. It applied only to those employees in the departmental service who were subject to the Classification Act of 1923, 5 U.S.C.A. § 661 et seq. See Personnel Classification Board bulletin dated June 10, 1925, in Hearings before House Civil Service Committee on H.R. 7453, 70th Cong., 1st Sess. 9, Civil Service Commission Form 505 April, 1934. "The term 'Departmental Service' refers to positions in the departments and general offices at

Washington, D. C." Civil Service Commission Form 2346 January, 1921.

8. "The term 'classified service' indicates the parts of the service within the provisions of the civil-service law and rules requiring appointments therein to be made upon examination and certification by the Civil Service Commission unless specially excepted from competition * * *." Civil Service Commission Form 2346 January, 1921.

9. Hearings before House Civil Service Committee on H.R. 5101, H.R. 5147, 76th Cong., 1st Sess. 6.

At that time paragraph 5 which had been amended [10] read as follows: [11]

"In harmony with statutory provisions, when reductions are being made in the force, in any part of the classified service, no employee entitled to military preference in appointment shall be discharged, dropped, or reduced in rank or salary if his record is good, or if his efficiency rating is equal to that of any employee in competition with him who is retained in the service."

It will be noted that although paragraph 5 did not specifically provide that a veteran rated good was to be preferred only over non-veterans with whom he was in competition, it was so interpreted by the Commission consistently with the practice that obtained at least as far back as 1925.

As stated above, it was Executive Order 8705, effective November 7, 1940, which finally changed the language of paragraph 5 so as to make it clear that preference was granted only over competing employees. As indicating, however, that that change of language was one of form rather than substance it is to be noted that there did not occur a corresponding change in the applicable regulations. Still in effect under this 1940 amendment of paragraph 5 were the same regulations which had been in effect on June 1, 1938.

These regulations defined competing employees as those "who are engaged in the same line of work." And by providing that paragraph 5 did not apply when a reduction in force was of such an extent as to eliminate all employees of like tenure they recognized that the veteran who was rated good had no absolute right to be retained.[12]

These regulations remained in effect until superseded on July 31, 1943. The new regulations are substantially similar to those which were applied by the defendants to this plaintiff.[13] They provided that a veteran's right to preference in retention when he had a rating of good was to operate only with regard to those employees in the same local commuting area who performed essentially the same work functions.[14]

10. Executive Order 5068, March 2, 1929, added to paragraph 5 the following provision: "or if his efficiency rating is equal to that of any employee in competition with him who is retained in the service." This, of course, went beyond the provisions of the Act of 1912.

11. Executive Order 7915, June 24, 1938, effective Feb. 1, 1939, 3 C.F.R. pp. 339, 349-50, Cum.Supp.1943. The only change made by this amendment was the deletion of the word "or" after the word "discharged." This, of course, worked no change in meaning so far as the present problem is concerned.

12. "12.105 Reduction of force. (a) Departments and independent offices shall, subject to the provisions of § 12.5, follow the order herein given in making dismissals from the classified service because of reduction in force:
"(1) All temporary employees;
"(2) All probational employees;
"(3) Permanent employees.
"(b) In making a reduction in force, only those employees in the class under consideration (temporary, probational or permanent) who are engaged in the same line of work are to be considered as in competition with each other. The provisions of § 12.5 apply to reductions in each of these three classes when the reduction does not require the dismissal of all employees in any particular class." 5 C.F.R. § 12.105, 1st ed. 1939.

13. Note 2, supra.

14. "§ 12.303 *Organization unit and class*. The head of each department or establishment shall determine the organization units and classes in which the contemplated reduction in force is to be made. Organization units designated as separate groups for reduction in force purposes shall be materially distinct from each other in work function or in geographical location and shall be organized and operated as separate entities with clearly separable staffs of employees. Ordinarily, organization units located within the same local commuting area shall not be considered to be materially distinct from each other in geographical location. The organization unit designated as a separate group for reduction in force purposes shall be as large and have as wide coverage as is administratively feasible. Consideration shall be given to making organization units correspond with the organizational jurisdiction of efficiency rating committees. Within the determined organization unit, the class in which the contemplated re-

This specification of a geographical and functional area within which employees were required to be found in order to be considered in competition with one another was not a novel one. In 1934 the Attorney General had ruled that under paragraph 5—which did not then contain language indicating that a veteran rated good had retention preference only over competing employees—it was proper for the Department of Agriculture in the course of a reduction in force of junior veterinarians at the Chicago station of the Bureau of Animal Husbandry to separate a junior veterinarian who was a veteran with a rating of good when junior veterinarians without military preference were being retained at other stations throughout the country. The Attorney General said: [15]

"This view, as I am also informed, has been generally accepted and applied, and a strong presumption of correctness attaches to the administrative construction thus evidenced. Furthermore, the contrary view would be highly impracticable of application, requiring the transferring of employees from one station to another, perhaps far distant, in order to accomplish a reduction in force in a single office. In fact, an absurdity would be produced if the reduction in force were required by lack of funds and, yet, could not be accomplished without additional expense incident to such shifting of employees."

Another section of the 1943 regulations, by providing a method for choosing between veterans in the course of a reduction in force, clearly recognized that a veteran did not have an absolute right to be retained.[16]

Consequently, the regulations under which defendants sought to separate plaintiff were the culmination of a consistent executive policy of long standing. That policy, simply stated, was to grant veterans preference over *competing* non-veteran civil service employees. The determination of who were competing employees was left, as was undoubtedly permissible, to the Civil Service Commission which defined competing employees as those who performed the same type of work in the same local commuting area. The regulations applicable to the plaintiff simply continued the same test and so defendants' attempt to separate plaintiff was not in violation of any rights granted to him by the executive branch of the government.[17]

So, too, defendants' action under the regulations does not violate any of plaintiff's

duction in force is to be made shall include all positions allocated to the same class, service, and grade, and all positions of the same grade (although designated by another title) that are sufficiently alike that intertransfer of personnel is feasible. In ungraded positions, the class shall include all positions in an occupational level." 5 C.F.R. § 12.303, 1943 Supp.

15. 38 Ops.Atty.Gen. 79, 83.

16. "§ 12.305 *Order within category of tenure.* With respect to employees whose performance is evaluated under an efficiency rating system, the order of reduction in force within each category of tenure shall be:
 "(a) * * *.
 "(b) * * *.
 "(c) * * *.
 "(d) Employees with military preference who have efficiency ratings of 'Good' or better, in order of reduction credits.
 "Reduction credits shall be computed by giving a numerical value of 80 for a 'Good' efficiency rating, 88 for a 'Very Good' efficiency rating, and 96 for an 'Excellent' efficiency rating, and adding one credit for each full year of service with the Federal government. * * *" 5 C.F.R. § 12.305 (1943 Supp.).
 § 12.304 established categories of tenure within the organization units and classes decreed by § 12.303.

17. In the foregoing discussion I have assumed without deciding that the plaintiff's claim to rights existing before the Veterans' Preference Act of 1944 is available to him and that it has been preserved, if necessary, by the saving provision of that Act, 5 U.S.C.A. § 867. But see Mitchell v. Cohen, 333 U.S. 411, 422–423, 68 S.Ct. 518, 92 L.Ed. 774. I have not discussed the effect of the repeal of the Act of 1912, see note 4, supra, and the relation thereto of the general saving provision applicable to the repeal of statutes, 1 U.S.C. § 109, since I believe those matters are of no significance here in view of my holding that the plaintiff has not and could not have any rights under the Act of 1912.

rights under the Veterans' Preference Act of 1944,[18] 5 U.S.C.A. § 861, which provides in part:

"In any reduction in personnel in any civilian service of any Federal agency, competing employees shall be released in accordance with Civil Service Commission regulations which shall give due effect to tenure of employment, military preference, length of service, and efficiency ratings: *Provided, * * *: Provided further, That* preference employees whose efficiency ratings are 'good' or better shall be retained in preference to all other *competing* [emphasis supplied] employees and that preference employees whose efficiency ratings are below 'good' shall be retained in preference to competing nonpreference employees who have equal or lower efficiency ratings: * * *."

■ This second proviso of § 861 does no more than continue the executive policy exemplified in Executive Order 8705, March 5, 1941, and the 1943 regulations. In a general statement about the 1944 Act, Representative Starnes, its sponsor, said that it gave "legislative sanction to existing veterans' preference, to the rules and regulations in the executive branch of the Government" and that it would "broaden and strengthen those preferences." [19] Speaking of the second proviso, Civil Service Commissioner Flemming told the Committee that it "simply continues what has been in practice throughout the entire Federal service since 1923." [20]

The colloquy between Senator Byrd and Commissioner Flemming set out in the margin [21] illustrates that the veteran was not to have an absolute right to be retained and that the language of the Act of 1912 as adopted by the 1923 Executive Order had always been regarded by the executive as granting veterans no more than a retention preference over competing non-veteran employees.

■ It follows, then, that the regulations applicable here do not violate the Act of 1944 and consequently plaintiff was properly reached for separation since he makes no claim that the regulations were applied incorrectly by defendants.

Since the defendants have violated none of the plaintiff's rights, their motion for summary judgment is granted. The plaintiff's motion is denied.

Settle order.

18. See Leeds v. Rossell, D.C.S.D.N.Y., 101 F.Supp. 481, 483.

19. Hearings before Senate Committee on Civil Service on S. 1762, and H.R. 4115, 78th Cong., 2d Sess. 8.

20. Id. at 27.

21. "Senator Byrd. Suppose there was a general reduction of personnel in the Federal Government, which I think all of us realize sooner or later must occur. What preference will the veterans have as to the retention of jobs they may have?

"Mr. Flemming. There are three points which must be kept in mind. First of all, under this bill regulations will be required to give due effect, among other things, to length of service and then the next proviso specifies that any time spent in the armed forces shall be considered in determining seniority. The next point is really the most important.

It provides that a veteran who has an efficiency rating of good or better shall be retained in preference to a competing employee, that is, a veteran with an efficiency rating of good would be retained in preference to a nonveteran with an efficiency rating of excellent.

"Finally, when you get down below good, it provides that the veteran shall be retained in preference to the competing nonpreference employees who have equal or lower efficiency ratings.

"Senator Byrd. I think that goes as far as you could go.

"Mr. Flemming. That is right.

"The heart of the section which is the second provision, as I stated before, was reflected in an act of 1912, which applied only to the departmental service and then was extended by Executive order of March 3, 1923, to the entire service." Hearings before Senate Committee on Civil Service * * * 29.