John BASHEIN et al.
v.
UNITED STATES.
No. 476–53.

United States Court of Claims.
June 8, 1960.

John I. Heise, Jr., Washington, D. C., for plaintiffs. Leonard Meiselman, New York City, was on the briefs.

Thomas J. Lydon, Washington, D. C., with whom was George Cochran Doub, Asst. Atty. Gen., for defendant.

LARAMORE, Judge.

Plaintiffs,[1] Civil Service employees entitled to veterans' preference, were de-

1. Originally there were 76 plaintiffs in this case. The claims of 73 plaintiffs were dismissed because of failure to exhaust their administrative remedies. Frank I. Britton, Harold T. Malmstrom, and Frederick Menzel remain as the only plaintiffs in this case.

moted in grade by the New York Naval Shipyard during 1947. Each plaintiff sues for back salary, contending that his respective demotion violated section 12 of the Veterans' Preference Act of 1944, 58 Stat. 387, 390, and the regulation thereunder, 5 CFR 20.9(d) (1947 Supp.).

Plaintiffs contend that each demotion was the result of a reduction in force. Defendant contends that each plaintiff was reduced in grade as a result of a reorganization and, consequently, this is a section 14 situation rather than a section 12, 5 U.S.C.A. §§ 861, 863.

Section 12 of the Veterans' Preference Act, supra, provides that in a reduction in force veteran preference employees have greater retention rights than nonpreference employees with equal or lower efficiency ratings.

Section 14 deals with discharges or demotions for such cause as will promote the efficiency of the service. This section provides certain procedures; i. e., notice, time for answer, and right of appeal.

With respect to the above contentions, this court held in Adler et al. v. United States, 129 Ct.Cl. 150, that while section 12 expressly gives preference to a veteran only in case of a release incident to a reduction in force, there is no reason why the same preference was not intended by Congress to include a "release" from his former position although the veteran was retained in a subordinate position.

■ Therefore, since these plaintiffs were reduced in grade pursuant to the reorganization and such reorganization was directly related to and a direct result of a reduction in force, under the Adler decision, supra, it must be said that section 12 applies in this case. See also Reynolds v. Lovett, 91 U.S.App.D.C. 276, 201 F.2d 181.

Plaintiffs contend that one Brucato was, after being reduced in grade the same as plaintiffs, transferred shortly thereafter and promoted back to grade CPC–8 in an illegal scheme to retain him over plaintiffs. Plaintiffs also contend that a nonpreference employee named Taylor was occupying a position in the Naval Supply Depot and was in a grade higher than that to which plaintiffs were reduced.

The facts relative to Brucato's transfer are these. Brucato as early as April 8, 1947, prior to reclassification, had requested a transfer to the Naval Supply Depot, Bayonne, New Jersey, because he contemplated moving to New Jersey and wanted to be near his work. The Shipyard informed the Supply Depot that it would not object to such transfer and, accordingly, Brucato was interviewed by the Naval Supply Depot and found qualified for the position of Guard Supervisor, CPC–8. The Supply Depot then requested that Brucato be dropped from the Shipyard payroll in order that he could enter on duty at the Supply Depot on September 2, 1947. The record shows that the CPC–8 position at the Naval Supply Depot was created on June 19, 1947, and was vacant until Brucato's employment.

Brucato was reduced in grade at the same time plaintiffs were reduced, August 24, 1947. He continued in the reduced grade until transferred, and it cannot be said that at the time of reduction in grade Brucato was retained over plaintiffs. Furthermore, the Supply Depot position was not created until June 19, 1947, and was vacant until Brucato's employment. What apparently happened was that when Brucato found the open job at the Supply Depot, he asked and was given the same. We can detect no subterfuge to avoid the provision of section 12, supra.

If, however, the Shipyard and the Supply Depot were one and the same without separate retention registers for civilian policemen, we would agree with plaintiffs' contention that section 12 and section 20.9(d), supra, were violated if both were in the same competitive service and both were in the same competitive area or the same competitive level within the geographic area, and Bru-

cato and Taylor were each retained in preference to plaintiffs.

What makes our task difficult is that the regulation here involved was drawn for the purpose of protecting preference employees in the event of *release* because of a reduction in personnel. It was only because of the decision in the Reynolds v. Lovett case, supra, and the later decision in the case of Adler v. United States, supra, that employees reduced in grade were held to be entitled to the protection of section 12 of the Veterans' Preference Act, supra.

The situation here presented is, however, more complicated. Here plaintiffs are basing their claims on the fact that nonpreference employees with less retention rights were retained in higher grade in another Navy installation, i. e., Naval Supply Depot, whereas in the Reynolds and Adler cases, supra, the retained nonpreference employees were obviously in the same Navy installation; i. e., Naval Shipyard. Adler et al. v. United States, 134 Ct.Cl. 200, 226.

Thus the question to be determined is whether the retention of nonpreference employees in the Naval Supply Depot violated the spirit of section 12 under the rule laid down in Reynolds v. Lovett, supra, and Adler v. United States, 129 Ct.Cl. 150. We think not.

The facts show that two nonpreference employees, Brucato and Taylor, were working at the Naval Supply Depot in a grade higher than that to which plaintiffs were reduced. Plaintiffs accordingly contend that the Naval Supply Depot and the Naval Shipyard were one and the same; i. e., the same police force competitive area, and that section 20.9 (d) of the Commission regulation was violated.

Section 20.9(d) provides:

"*Exceptions; veterans preference employees.* No employee in subgroup A-1 with competitive status and serving in a position in the competitive service may be separated or furloughed in a reduction in force if there is a position in the competitive service in the department in any other competitive area or competitive level within the geographic area which may reasonably be expected to continue for 3 months or more not filled by an employee in subgroup A-1, which he is qualified to fill, unless he refuses a reasonable offer of transfer to a position meeting these requirements, * * *."

Since the above regulation was drawn and promulgated under an entirely different concept, we have grave doubts as to its applicability here. However, even if the regulation is applicable, the question of the relationship between the Shipyard and the Supply Depot remains.

With respect to this, there is no question that the Shipyard and the Supply Depot were under separate command, and that separate retention registers were maintained at each installation. The Shipyard was under management control of the Bureau of Ships, while the Supply Depot was under the management control of the Bureau of Supplies and Accounts. The activities of each were completely different and to hold that one could foist its employees on the other by a bumping process, merely because both were in the Navy Department and close neighbors, and both maintained a police force would, to put it mildly, create consternation in the camp of the employment officer of either.

The fact that plaintiff Malmstrom was on occasion assigned by the Shipyard to work at the Bayonne Annex is not significant. The New York Shipyard was responsible for the security at the drydock area in Bayonne, New Jersey, which was known as the Bayonne Annex of the Shipyard. Again there was no connection between the Bayonne Annex and the Naval Supply Depot other than that both were in the Navy Department. That this was the case is made clear by Navy Civilian Personnel Instruction 170.2-4 (Rev. I), dated May 1, 1946. Competitive area is therein defined as "a naval activity, * * * or that part of a naval activity for which special ap-

proval has been secured from the Civil Service Commission, within which employees of a competitive level are considered to be in competition. * * *." Naval activity (field service) is said to mean "a Naval Shipyard, Naval Air Station, Naval Ammunition Depot, Naval Supply Depot, * * * or other Naval or Marine Corps establishment or activity which constitutes a separate command. * * *." Civil Service Regulation 20.2(i) similarly defines "competitive area".

The record does not disclose that approval was sought or granted to broaden that competitive area as regarded the civilian police force of either the Naval Shipyard or the Bayonne Naval Supply Depot. Accordingly, when Malmstrom was occasionally assigned to work in the Bayonne Annex, he was not employed by the Supply Depot.

Therefore, we hold that the regulation was not meant to encompass the entire Navy Department, but was directed to each Naval establishment.

Since there were no nonpreference eligibles retained in grade in preference to plaintiffs in the New York Naval Shipyard, the reductions were accomplished in accordance with statute and regulations, and none of the plaintiffs here had any right to the positions which the nonpreference employees, Brucato and Taylor, held in the Supply Depot.

In the light of this opinion, it is unnecessary to discuss the other issues raised by defendant.

Plaintiffs' motion for summary judgment is overruled, defendant's motion for summary judgment is granted, and the petition is dismissed.

It is so ordered.

JONES, Chief Judge, and DURFEE and WHITAKER, Judges, concur.

MADDEN, Judge, took no part in the consideration and decision of this case.