Nichols, Judge,
delivered the opinion of the court: *
This is an action for loss of salary and other lawful benefits, resulting from plaintiff’s alleged unlawful discharge from Federal service. Fie is a World War II veteran with 10-point preference, due to partial disability, and an attorney, a member of the District of Columbia bar. Up to the time of his discharge, February 19,1960, and for some time prior, he had served as an “attorney-advisor,” GS-13, in the Office of Alien Property, Department of Justice, Washington, D.C. His services were at all times at least “satisfactory.” His separation was in no sense the result of any dissatisfaction with his efforts or qualifications but was solely to effectuate a RIF (govermnentese for reduction in force) necessary to keep the Office within budget and personnel ceilings applicable, in view of its progress in disposing of its war-created workload and its lack of any place in the permanent organization of the Government.
*3 The case is before us on cross-motions for summary judgment, there being no substantial dispute as to the facts.
The essence of plaintiff’s claim is that under 5 U.S.C. 861 (a part of the Veterans’ Preference Act of 1944, 58 Stat. 390, as amended), the economy axe should have fallen on someone else and not on him, because of the retention rights pertaining to him as a veteran. Whether in all other respects the officers of the Government fulfilled their obligations towards him is not before us. Our inquiry must be limited to whether that single section has been correctly applied.
It requires that any RIF in any Federal agency shall be accomplished in accordance with Civil Service Commission Regulations which “shall give due effect to tenure of employment, military preference, length of service, and efficiency ratings.” The Commission had in effect in 1960 Regulations in 5 CFR, Part 20 (1961 ed.), exercising this authority and telling how, in light of veterans’ preference, the painful task of effecting RIF’s should be accomplished.
The following portions are pertinent here:
“Competitive area” means that part of an agency, usually within a local commuting area, in which employees are shifted (reassigned, promoted, and demoted) under a single _ administrative authority, and within which competitive levels are established in reductions in force. * * * 5 CFR 20.2(e).
Order of selection: (a) Determination of competitive area. (1) A normal competitive area shall be a bureau or an equivalent part of an agency in the departmental service, or all of a field installation in a local commuting area, or any combination of these as may be determined by the agency.
(2) * * * Agencies may establish competitive areas which meet or exceed the normal competitive area without obtaining prior approval of the Commission. 5 CFR 20.4(a).
Once a “competitive area” is defined, the next step is a “competitive level” within the “area” which consists of “all similar positions * * * in which employees could be readily interchanged.” Among employees of the same competitive level in the same competitive area, the Regulations proceed to give veterans’ preference to its “due effect” along with other *4 factors in determining, in case of a BIF, who will go and who will stay.
The Department of Justice established that the Office of Alien Property in Washington was a separate “competitive area,” as was each of the regular permanent Divisions: Tax, Civil, Lands, Criminal, etc. This occurred long before the instant controversy arose. 1946 apparently was the date, and it was reaffirmed in 1954. The Office of Alien Property had comprised 686 employees when it went under the Attorney General in 1946. By 1960 it was phased down already to 172 persons and for fiscal 1961 it had to diminish to meet Bureau of the Budget ceilings, to 72. The BIF that separated plaintiff, February 19, 1960, included him among a total of 64. Some 24 employees were transferred to other Divisions or offices in the Department, but apparently these persons (some of whom counsel state were not veterans) got these jobs on their own, or with voluntary assistance by per-sonel officers of the Department, and not by virtue of section 861, supra, or any other procedure or requirement that was mandatory on their new employers.
The record does not reflect the ratio of veterans to non-veterans in the Office of Alien Property, but no doubt, as everywhere in Washington, it was high. In a series of slashing BIF’s, in that office as a competitive area, non-veterans would be soon gone and veterans would be competing for retention only against other veterans, and thus their veterans’ preference, as such, would cease to be a significant retention factor. Plaintiff says that in the circumstances the separate identification of the Office of Alien Property as a competitive area for veterans’ retention gravely prejudiced him. Indeed, it is too obvious to require detailed demonstration that his retention rights would have had far more value if he had been vouchsafed a competitive area that included, not just an office and activity slated for abolition, but also those offering stable employment and a permanent future in the Federal scheme of things. Mindful of the historic national policy respecting veterans, we must therefore, and do, review the procedure followed herein with anxious care.
And this must be the more true because, as lawyers, we cannot take very seriously the notion, bandied about by coun *5 sel in this case, that a lawyer who has been educated for the law generally, and admitted to the bar generally, becomes somehow disqualified for any but a special branch of law by the happenstance that he has, for a few years, been called to serve in that particular branch. There is nothing in the record herein to suggest that plaintiff was not just as qualified to serve in other Divisions of the Justice Department as he was to serve in the Office of Alien Property. The regulation, in fact, confines veterans threatened with K.IF to competition within their “competitive area” whether their capabilities are completely fungible or whether they hold a job whose title and grade reflects a special expertise not likely to be of service elsewhere in Government.
In most executive departments in Washington, the Bureau is the organizational subdivision next below the departmental level. It would seem eminently reasonable, therefore, that the Department of Justice should have regarded its Divisions : Tax, Anti-Trust, and the rest, as “an equivalent part of an agency” to a Bureau under 5 CFR 20.4(a), sufra, inasmuch as, except for the FBI and the Bureau of Prisons, most of the major organizational subdivisions of Justice are not known as Bureaus. In its heyday, the Office of Alien Property was comparable in size to one of these Divisions, and like them, had an Assistant Attorney General in charge. We consider, therefore, that the Department of Justice was told in the regulation as published, without ambiguity, to regard the Office of Alien Property as the equivalent of a Bureau for veterans’ retention purposes, and the unpublished correspondence in our record was to the same effect. A veteran, seeking employment in the Office of Alien Property, would have regarded his limited “competitive area” in the eminently foreseeable case of a RIF, as an implied term of his employment. A non-veteran, seeking employment in a permanent Bureau, Division or Office, would have seen in the regulation an implied term of employment assuring him security in his job against replacement by veterans claiming “bumping” or transfer rights from abolished or diminished temporary activities. Hence, we think the regulation here involved is conclusive unless, as plaintiff urges, it is invalid. To this issue we now turn.
*6 It is obvious from the language of the statute that the Congress, for all its justified concern for the postwar employment of veterans, was not willing that, once one of them was on the civil payroll of a temporary activity, he should compete for retention Government-wide, with all the disruption attendant, whenever the inevitable EIF occurred. It left the Civil Service Commission to deal with the situation by regulation within clear guidelines which it laid down. The regulation that ensued has been attacked without success by veterans whose retention rights it curtailed. Elder v. Brannan., 341 U.S. 277 (1951); Fass v. Gray, 197 F. 2d 587 (D.C. Cir. 1952), cert. denied, 344 U.S. 839; and Leeds v. Rossell, 101 F. Supp. 481 (S.D.N.Y. 1951). In Elder, supra, the court calls attention to regulations which existed when the 1944 Act was passed, which were intended to be altered only in specially identified situations, and which made the veteran’s retention x-ight much short of absolute (p. 283 and ff.). In Leeds, supra, the court held, in the case of field employees, the limitation of competitive areas by geographical propinquity was not unreasonable. Hilton v. Sullivan, 334 U.S. 323 (1948), upholds the same regulation against attack by a displaced non-veteran. In Bashein v. United States, 150 Ct. Cl. 138, 279 F. 2d 255 (1960), this court upheld the validity of the Navy’s treatment of two Naval shipyards both in the Port of New York as separate competitive areas; the validity of the underlying Civil Service regulation was not directly put in issue. The Congress amended section 861, supra, in 1964 by Public Law 88-448 without doing anything to impair the “competitive area” system as set up in the regulations and as dealt with in the foregoing cases.
There would seem to be no doubt that in enacting section 861 originally the Congress was made fully aware of a long standing policy of limiting veterans’ retention rights by competitive area and competitive level, then stated in 5 CFE (Supp. 1943) Sec. 12.301-12.313, and that the Commission did not expect the new legislation to effect changes in that regard. A very full account of this legislative history is contained in Reeber v. Rossell, 106 F. Supp. 373 (S.D.N.Y. 1952), mod. on other grounds, 200 F. 2d 334 (2d Cir. 1952), and need not be repeated here.
*7 Conceding arguendo that the authorities do not conclusively show judicial approval of that part of the regulation which makes the Bureau the “normal competitive area” in the Washington headquarters of executive departments, they come so near to it that any result contrary to the direction they point would have to rely on tenuous and artificial distinctions. If anything the evils the Congress and the Commission intended to guard against, of endless and uncontrolled “bumping” would, we think, be something headquarters might be more sensitive to than the field. If it is a special hardship to be BIFFED in Washington, because it is a Government town, the opportunities for new Government employment are greater here too. We may wonder that the Commission did not find some way to give the retention rights of veterans in temporary, phasing-out activities more reality and substance, but we must remember that section 861 is only one cog in the machine of veterans’ preference, and the other cogs are not under our observation in this litigation. In any event, the involved interpretation and application of section 861 was for the Commission, not the courts, absent abuse of discretion not shown here. The Commission was not required to allow a veteran to compete outside his “competitive area” merely because his ability to do the work there was not in question. In most of the court decisions cited, supra, the talents of the veteran plaintiffs were in no respect specialized but were assumed to be completely fungible.
The record affords no other issue of substance which would require a decision for plaintiff if resolved in his favor. Defendant’s cross-motion for summary judgment is therefore granted, plaintiff’s motion is denied and judgment is entered for the defendant. The petition is dismissed.

We are indebted to ¿Trial Commissioner C. Murray Bernliardt, for Ms opinion, prepared at the direction of tlie court. We reach the same result by a different route.