**Orin Thomas GRIER, Petitioner,**

v.

**DEPARTMENT OF HEALTH AND HUMAN SERVICES, Respondent.**

**Appeal No. 84–1481.**

United States Court of Appeals, Federal Circuit.

Dec. 18, 1984.

Orin Thomas Grier, pro se.

Mary Mitchelson, Dept. of Justice, Washington, D.C., submitted for respondent.

Before SMITH, NIES and BISSELL, Circuit Judges.

BISSELL, Circuit Judge.

The decision of the Merit Systems Protection Board (Board), Docket Number SF03518210237, affirming the reduction in force separation of Orin T. Grier (Grier) is affirmed.

## BACKGROUND

Grier was a civilian employee at the San Francisco Public Health Service Hospital. On August 17, 1980 [sic, 1981], Grier received a general notice of a reduction in force (RIF) because of an anticipated decrease in funding for fiscal year 1982. On October 19, 1980 [sic, 1981], Grier received a specific RIF notice which advised him that Health and Human Services (agency) had determined that the San Francisco Public Health Service Hospital would be closed because of the reduced funding provided by Omnibus Budget Reconciliation Act of 1981, Pub.L. No. 97–35, 95 Stat. 357 (1981). The notice further stated that his competitive area was the San Francisco Public Health Service Hospital. Since the entire hospital would be closed, he would be separated by RIF procedures.

Grier argued before the Board's presiding official that the agency's determination to place him in a competitive area consisting of only the San Francisco Public Health Service Hospital denied him the right to compete for other positions and thus was contrary to the regulations. He contended that the agency's decision constituted harmful procedural error.

The agency's testimony showed that each Public Health Service hospital was under a regional office's appointing authority forming a separate competitive area. Grier's competitive area was limited to the local commuting area for the San Francisco hospital.

The presiding official found the agency's implementation of the RIF was in accordance with applicable regulations. The presiding official's initial decision became final pursuant to 5 C.F.R. § 1201.113(b).

## OPINION

In this appeal, Grier raises the same issue argued before the Board. He contends that the agency decision to make the San Francisco Public Service Hospital a competitive area was contrary to regulations promulgated by the Office of Personnel Management (OPM) and Chapter 351 of the Federal Personnel Manual (FPM). In petitioner's view an agency *must* designate a competitive area large enough—either geographically or organizationally, or both—so that some jobs remain in the competitive area after jobs are eliminated. Otherwise, the area is not "large enough to permit adequate competition among employees" as required by FMP 351, 2–2b (1981).

We have found no statute, regulation or case law which requires an agency to expand a competitive area for the sole purpose of providing actual competition for a job.

The validity of petitioner's separation turns on the validity of OPM's regulations concerning RIFs. These regulations were adopted pursuant to 5 U.S.C. § 3502 which reads in part: "The Office of Personnel Management shall prescribe regulations for the *release* of competing employees in a reduction in force ...." (Emphasis added.)

The RIF regulations promulgated by OPM pursuant to its legislative mandate in 5 U.S.C. § 3502 provide the administrative process through which the government eliminates jobs and deals with the employees who formerly occupied the abolished positions. Unlike adverse actions, RIFs are not aimed at removing particular individuals; rather, they are directed solely at positions. After the agency has decided to eliminate positions as a matter of its inde-

pendent managerial discretion, the identification of affected employees is governed by OPM regulations. To avoid the personnel problems which might result if all government employees were affected by every RIF, OPM has limited the term "competing" by carefully defining the scope of competition in 5 C.F.R. §§ 351.-401–.506.

Two criteria are used in delineating the scope of competition: competitive area and competitive level. Here we are concerned solely with that portion of the RIF regulations dealing with competitive area.

A competitive area is defined as the geographical area and bureaucratic unit within which the incumbent of an eliminated position will be permitted to vie for retention. 5 C.F.R. § 351.402. Agencies, therefore, must accommodate two elements, administrative structure and geography, in determining competitive areas.

As to structure, a competitive area should include "all or that part of an agency in which employees are assigned under a single administrative authority." FMP 351–2–2a (1981). This requirement is designed to limit the effects of a RIF to the administrative component whose management decided the reduction was necessary. Ideally, the regulations permit a single administrative unit to plan and carry out the entire personnel action with only minimal effects on the remainder of the agency's administrative structure.

As to the geographic requirement, no competitive area need be larger than the "local commuting area." FPM 351–2–2b (1981).

Although a competitive area theoretically should encompass no less than a single distinct agency subdivision and no more than a single commuting area, an agency may create competitive areas larger than those required by the regulations without prior OPM approval. 5 C.F.R. § 351.402(c).

A commentator has stated that "[t]his ability to expand competitive areas appears to be the most advantageous method of encouraging enhanced competition whenever efficiency can be preserved. Still, any attempt by the [OPM] to promulgate regulations identifying when expanded competitive areas should be created would likely result in considerable confusion." Note, *Reduction In Force: A Guide For The Uninitiated*, 44 GEO.WASH.L.REV. 642, 651 n. 51 (1976).

■ Therefore, the agency may, but need not, expand the competitive area to provide actual competition. This is left solely to the agency's discretion and this court has held: "An agency is accorded wide discretion in conducting a reduction in force; absent a clear abuse of discretion, a substantial departure from applicable procedures, a misconstruction of governing statutes, or the like, we do not upset a final agency decision." *Cooper v. TVA*, 723 F.2d 1560, 1562 (Fed.Cir.1983) (quoting *Dancy v. United States*, 668 F.2d 1224, 1226, 229 Ct.Cl. 300 (1982)).

One of our predecessor courts has stated that it was obvious from the language of 5 U.S.C. § 3502(a), which remains virtually unchanged since its enactment in 1944,* that Congress has left the OPM to deal with all the disruptions whenever the inevitable RIF occurred. The regulations that ensued have been attacked without success by employees whose retention rights the statutes curtailed. *Finch v. United States*, 179 Ct.Cl. 1 (1967) (citing *Elder v. Brannan*, 341 U.S. 277, 71 S.Ct. 685, 95 L.Ed. 939 (1951); *Fass v. Gray*, 197 F.2d 587 (D.C.Cir.), *cert. denied*, 344 U.S. 839, 73 S.Ct. 39, 97 L.Ed. 653 (1952); *Leeds v. Rossell*, 101 F.Supp. 481 (S.D.N.Y.1951)). The *Finch* court said:

There would seem to be no doubt that in enacting section 861 originally the Congress was made fully aware of a long

---

* With the exception of minor amendments and the 1978 amendment which substituted the OPM for the Civil Service Commission, the current statutory provisions applicable to RIFs were enacted in the Veterans Preference Act of 1944.

The Act codified the many statutes, executive orders and administrative practices that had been used to give preferences in federal employment through the preceding century.

standing policy of limiting veterans' retention rights by competitive area and competitive level, then stated in 5 CFR (Supp.1943) Sec. 12.301–12.313, and that the Commission did not expect the new legislation to effect changes in that regard.

... In any event, the involved interpretation and application of section 861 was for the Commission, not the courts, absent abuse of discretion not shown here.

179 Ct.Cl. at 6–7.

In *Bashein v. United States,* 279 F.2d 255, 150 Ct.Cl. 138 (1960), the court upheld the validity of the Navy's treatment of two shipyards, both in the Port of New York, as separate competitive areas and implied that it was at the agency's discretion to seek a broadening of that competitive area. The court held:

[T]here is no question that the Shipyard and the Supply Depot were under separate command, and that separate retention registers were maintained at each installation.... The activities of each were completely different and to hold that one could foist its employees on the other by a bumping process, merely because both were in the Navy Department and close neighbors, and both maintained a police force would, to put it mildly, create consternation in the camp of the employment officer of either.

....

The record does not disclose that approval was sought or granted to broaden that competitive area as regarded the civilian police force of either the Naval Shipyard or the Bayonne Naval Supply Depot ....

Therefore, we hold that the regulation was not meant to encompass the entire Navy Department, but was directed to each Naval establishment.

... the reductions were accomplished in accordance with statute and regulations....

279 F.2d at 257–58, 150 Ct.Cl. at 142–43.

■ The agency properly established the hospital, an activity under a separate administration, as Grier's competitive area in accordance with the requirements of 5 C.F.R. § 351.402. This section creates retention rights among competing employees in a competitive area. It does not guarantee that there will be positions for which employees may compete. Nor does it create a right to continued employment if the decision is made to terminate some or all of the employees in a given group. *See American Federation of Government Employees, AFL–CIO v. Stetson,* 640 F.2d 642, 645 (5th Cir.1981). Further, the FPM specifically recognizes that all positions may properly be eliminated within a competitive area. FPM 351–3–2d(1). Thus, the proper interpretation of the regulations is contrary to that asserted by petitioner.

In light of the substantial evidence presented in support of the Board's decision, and the agency's compliance with applicable regulations, we affirm.

AFFIRMED.