Willis R. BEARDMORE, Petitioner,

v.

**DEPARTMENT OF AGRICULTURE, Respondent.**

**Appeal No. 85–517.**

United States Court of Appeals, Federal Circuit.

Decided May 10, 1985.

Michael P. Miller, Weinburg, Ziff & Miller, Palo Alto, Cal., for petitioner.

Hillary A. Stern, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., for respondent. With her on the brief were Richard K. Willard, Acting Asst. Atty. Gen., David M. Cohen, Director, Robert A. Reutershan, Asst. Director and Beacham O. Brooker, Jr., Washington, D.C.

Virginia Strasser, Office of the General Counsel, Dept. of Agriculture, Washington, D.C., of counsel.

Before BALDWIN, KASHIWA, and MILLER, Circuit Judges.

JACK R. MILLER, Circuit Judge.

Petitioner is a former employee of the Agricultural Marketing Service ("AMS"), United States Department of Agriculture ("USDA" or "agency"). Prior to his removal, he had been an employee of the agency for twenty-four years. Effective January 6, 1984, he was removed from his position of Agricultural Commodity Grader, GS–1980–10, for failure to accept an ordered reassignment from San Jose, California, to a position of like grade and pay in Chicago, Illinois. He appealed to the Merit Systems Protection Board ("MSPB"

or "board") contending that his reassignment was invalid because USDA had improperly defined the local commuting area in excluding Watsonville, California, which resulted in a retention register that did not include employees in the Watsonville office.[1] It was stipulated before the Presiding Official of the MSPB that if Watsonville had been included, an employee in that office who had less seniority than petitioner would have been reassigned, thereby creating a vacancy for petitioner to fill in Watsonville.

The Presiding Official issued an initial decision dated April 25, 1984, affirming the agency decision. Petitioner sought review by the full board of the MSPB, which denied the petition, finding that it did not meet the criteria for review prescribed by 5 C.F.R. § 1201.115. 22 M.S.P.R. 649 (1984) Accordingly, the initial decision became the final decision of MSPB under 5 C.F.R. § 1201.113(b), and that decision is before us for review. 5 U.S.C. § 7703(a)(1). We reverse.

## Facts

Immediately prior to his removal, petitioner was employed in the San Jose field office of the Processed Products Branch, Fruit and Vegetable Division, AMS, USDA. The Processed Products Branch's inspection program is funded entirely by a trust fund of user fees, and there are no Government appropriated funds for the program. Therefore, when three processing plants canceled their contracts for inspection services, there was insufficient work in the San Jose area for Agricultural Commodity Graders, making three GS–1980–10 Agricultural Commodity Grader positions (including that of petitioner) excess.

The agency decided to solve the overstaffing problem by using a procedure which would avoid implementing a RIF. This was prescribed by USDA's Food Safety and Quality Service ("FSQS") Directive 4300.1. The Directive states that the policy of FSQS is to avoid reductions in force, when possible, by reassignments to vacant positions at the same grades and salaries, and covers reassignments to vacant positions in work reduction situations when reassignments must be made outside the commuting area. The Directive provides, *inter alia*, as follows:

> The area of competition for this purpose will be the local commuting area where the work reduction occurred or where the positions are to be abolished. This area will be determined by the Servicing Personnel Office (SPO). Reassignments under this policy will not be made for the purpose of ultimately separating the reassigned employees.

> A local commuting area is a geographic area that usually constitutes one area for employment. It includes a population center (or two or more neighboring ones) and the surrounding localities in which people live and reasonably can be expected to travel back and forth daily from home to work in their usual employment. The extent of a commuting area ordinarily is determined by common practice [2] or by what reasonably can be expected on the basis of the availability and cost of public transportation or the convenience and adequacy of highways,[3] and the travel time required to go to and from work.

1. Petitioner also contended that it was error for the agency to utilize an administrative reassignment action due to work reduction in the San Jose office in lieu of instituting a reduction in force ("RIF"). However, in view of our disposition of the case, we do not reach this contention.

2. Petitioner contends that excluding Watsonville from the local commuting area with San Jose is contrary to the actual commuting patterns prevalent in the local area. His witness, Marvin Spielman (Western Division Vice President for Greyhound Temporary Personnel), who was qualified by the Presiding Official as an expert, testified that a commute of fifty miles "is very common." (The context of this testimony indicates that the distance referred to is one-way.)

3. There is uncontradicted testimony by petitioner's expert witness, Marvin Speilman, that ninety-nine percent (and possibly even higher) of the means of transportation in the Santa Clara Valley and Santa Cruz County where San Jose and Watsonville are located is "cars."

The parties stipulated before the Presiding Official that four-lane divided access freeways connect San Jose and Watsonville. Also, we take judicial notice of the American Automobile Association's 1985 edition of the map of California which shows that the distance between Watsonville and San Jose is approximately 45 miles; between Rodeo and San Jose approximately 80 miles; and between Rodeo and Sunnyvale approximately 70 miles.

It was also stipulated that John F. Lewis, a GS–1980–10 Agricultural Grader, performs the same duties as formerly performed by petitioner in San Jose and has the same job title as petitioner. Mr. Lewis was senior to petitioner and the other two graders who were reassigned.

Mr. Elton Hughes (Regional Director of the Processed Products Branch), a USDA witness, testified that until petitioner's case there had never been an occasion for defining the "local commuting area" for San Jose for work reduction purposes.

Mr. Joe Fly, Processed Products Branch Chief in Washington, D.C., testified that he had talked to "personnel" about "the time ... it would require to go from San Jose to Watsonville ... as far as the need for an inspector to be able to rapidly respond to, say, recalls from a plant situation.... So we would not want them commuting any great distance to, to respond to that."

Mr. Raymond Pagliarini (the agency's personnel staffing specialist in Washington, D.C.), a USDA witness, testified that the AMS personnel division takes a 35-mile radius around the area in which work reduction occurs, but "that's not a hard and fast ruling."

Mr. Salvador Morales (Officer in Charge of the San Jose field office), also a USDA witness, testified that Mr. Lewis commutes from Rodeo to San Jose; that the shortest estimated commute time between Watsonville and San Jose is one hour and that he believed the trip could take one and one-half hours or longer if any problems occurred. He also testified that work assignment hours of a GS–10 inspector are not "set," but varied:

One day a week he will go to work quite early, possibly six, seven o'clock in the morning. The following day he may go in at ten.

One day a week he goes in and works a night shift. The following day he may just go in at noon.

Mr. Spielman further testified that, for purposes of the commuting employees in the area, Watsonville is an integral part of the San Jose commuting area; that in the morning, when traffic is light (going from San Jose to Watsonville), commuting time of fifty to fifty-five minutes could be easily accomplished, although up to one-and-a-quarter to one-and-a-half hours could be required if an employee was required to report to a Watsonville plant at 6:00 p.m. for a night shift.

### Analysis

Our scope of review limits reversal of MSPB decisions in favor of the Government to agency actions, findings, or conclusions found to be—

(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(2) obtained without procedures required by law, rule, or regulation having been followed; or

(3) unsupported by substantial evidence.

5 U.S.C. § 7703(c).

The MSPB notes that the agency policy (FSQS Directive 4300.1) appears to be purposefully broad and provides for discretion in determining the local commuting area; that reasonableness is a twice-mentioned consideration. However, an agency's discretion is not unlimited, and "reasonableness" cannot cover for arbitrary or capricious action. Here, for the first time, the agency defined the San Jose commuting area and, in doing so, excluded Watsonville, which, we observe, is included in the San Jose area for administrative purposes. At the same time, the agency included Mr. Lewis in the retention register, notwithstanding that his one-way commute from

Rodeo to San Jose is approximately 80 miles.[4] This appears to be arbitrary to us and beyond the pale of "reasonableness." Nor are we persuaded that the agency's action is supported by substantial evidence. The agency's personnel staffing specialist in Washington, D.C., without elaboration, stated that the AMS personnel division takes a 35-mile radius around the area in which work reduction occurs, but that this was "not a hard and fast ruling." There is a dearth of specific, meaningful evidence supporting the exclusion of Watsonville from the San Jose commuting area.

Accordingly, we hold that appellant's reassignment was invalid, and the decision of the MSPB must be *reversed.*[5]

REVERSED

---

**4.** The somewhat abbrievated record on appeal contains an undated "Retention Register" showing Mr. Lewis as the only one of the four GS–1980–10 Agricultural Commodity Graders not reassigned, with location at Sunnyvale, rather than San Jose. Even if this is correct, the one-way commute between Rodeo and Sunnyvale is approximately 70 miles. Such a commute is not consistent with Mr. Fly's statement of concern for rapid response to "recalls from a plant situation."

**5.** The Government has cited several cases involving the analogous situation of "competitive area" in a RIF, *e.g., Grier v. Department of Health & Human Services,* 750 F.2d 944 (Fed. Cir.1984). These turn on particular fact situations supporting an agency's exercise of discretion and are not precedents for the particular fact situation in this case, where, as pointed out earlier, the agency decided to avoid implementing a RIF.