John J. MARKLAND, Petitioner,

v.

OFFICE OF PERSONNEL
MANAGEMENT,
Respondent.

No. 97–3249.

United States Court of Appeals,
Federal Circuit.

April 2, 1998.

Edward H. Passman, Passman & Kaplan, P.C., Washington, DC, argued, for Petitioner. With him on the brief were Susan E. Jewell, and Joshua F. Bowers.

E. Michael Chiaparas, Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, argued, for Respondent. With him on the brief were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, and Jeanne E. Davidson, Assistant Director. Of counsel on the brief were Lorraine Lewis, General Counsel, and Joseph E. McCann, Attorney, Office of The General Counsel, U.S. Office of Personnel Management, Washington, DC.

Woodley B. Osborne, Osborne & Deutsch, Washington, DC, for amicus curiae Metropolitan Washington Employment Lawyers Association.

Before MAYER, Chief Judge,* RICH and NEWMAN, Circuit Judges.

MAYER, Chief Judge.

John J. Markland seeks review of the February 26, 1996, initial and February 26, 1997, final decisions of the Merit Systems Protection Board, 73 M.S.P.R. 349, sustaining his separation by the Office of Personnel Management pursuant to a reduction in force. We affirm.

### Background

Following its redesign in January 1995, the Office of Personnel Management (OPM) delineated fifteen departmental service competitive areas pursuant to 5 C.F.R. § 351.402(b) (1997), each of which corresponded to a subdivision of the central office. The Office of Contracts and Administrative Services (OCAS) and the Office of Information Technology (OIT) were separate competitive areas. Markland was transferred to OCAS from OIT in February 1995. In June 1995, OPM decided to conduct a reduction in force (RIF) because of a lack of funding. Pursuant to this RIF, OCAS eliminated Markland's position in July 1995, and notified him that his separation would be effective on September 29, 1995.

Markland challenged his separation on two grounds: (1) OPM failed to follow RIF regulations with respect to his competitive area, competitive level, and assignment rights; and (2) OPM transferred him into OCAS, where it knew that his chances for surviving the upcoming RIF were slim, in retaliation for his conducting protected whistleblower activities in 1993. Specifically, Markland alleges that he suggested cost-cutting measures to his supervisor at OIT, Walter G. Sutton, a member of OPM's Reinvention Initiatives Task Force, which reviewed employee cost savings suggestions. Markland claims to have alienated Sutton by making these suggestions directly to the Director of OPM after Sutton had rejected them for personal reasons. He alleges that as a result, Sutton threatened to fire him, gave him a "poor" review (which was later changed to "exceeds fully successful"), detailed him to the Combined Federal Campaign, and finally transferred him to OCAS. OPM responds that its files do not show that Markland

* Chief Judge Mayer assumed the position of Chief Judge on December 25, 1997.

made any suggestions, Sutton made the suggestions that Markland claims as his, and Sutton gave Markland a "fully successful" rating in his draft review, which he changed to "exceeds fully successful" after Markland surreptitiously showed the draft review to Sutton's supervisor.

In preparation for his hearing before the board, Markland sought discovery though document requests and interrogatories. OPM provided substantial information in response, but objected to several requests as either overly broad, burdensome, or irrelevant. Markland moved to compel discovery, but the administrative judge (AJ) granted only partial relief. He then ceased further discovery efforts, waived his right to a hearing, and allowed the AJ to decide the case on the basis of the record evidence only. The initial decision held that OPM properly drew Markland's competitive area and level, did not violate his assignment rights, and neither transferred nor separated him in retaliation.

Markland appealed to the board arguing that the AJ erred in denying his motions to compel, which prevented him from proving that OPM failed to comply with RIF procedures and retaliated against him for whistleblower activities. The board found that even if the AJ erred, these decisions did not prejudice Markland because he did not obtain discovery through other available avenues and withdrew his request for a hearing, in which he could have developed additional evidence. This appeal followed.

## Discussion

### A. Reduction In Force

■ We must affirm the board's decision unless it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c) (1994). We accord an agency "wide discretion in conducting a reduction in force; absent a clear abuse of that discretion, a substantial departure from applicable procedures, a misconstruction of governing statutes, or the like, we do not upset a final agency decision." *Deweese v. Tennessee Valley Auth.*, 35 F.3d 538, 541 (Fed.Cir. 1994) (quoting *Cooper v. Tennessee Valley Auth.*, 723 F.2d 1560, 1562 (Fed.Cir.1983)).

■ OPM bears the burden of proving by a preponderance of the evidence that the RIF procedures were properly invoked. *See Wilburn v. Department of Transp.*, 757 F.2d 260, 262 (Fed.Cir.1985). To satisfy its burden with respect to Markland's separation from OCAS, OPM's evidence of record includes an affidavit by the personnel management specialist who was in charge of preparing the final retention registers for the OCAS RIF, Diane Tyrrell; an affidavit by the Director of OCAS, Lynn R. Furman; certification under 5 C.F.R. § 351.402(c) (1997) by OPM's Associate Director for Employment, Leonard R. Klein, that the designation of OCAS as a single competitive area complied with the regulations; and OPM's April 4, 1995, Memorandum for Associate Directors, Office Directors and Field Service Directors, describing the revised delegations of authority to the heads of the new competitive areas ("Revised Delegations"). OPM has offered additional evidence on appeal, which is not part of the record, and argues that we may take judicial notice of it. Because the evidence of record is sufficient to establish a *prima facie* case, we have no need for this additional material.

Pursuant to 5 U.S.C. § 3502(a) (1994), OPM has promulgated regulations that agencies must follow in conducting a RIF, one of which requires the establishment of competitive areas in which separated employees may compete for jobs that survive the RIF. *See* 5 C.F.R. § 351.402 (1997). "A competitive area must be defined solely in terms of an agency's organizational unit(s) and geographical location, and it must include all employees within the competitive area so defined," and "may consist of all or part of an agency." *Id.* § 351.402(b). With respect to departmental service, which includes OCAS, this sub-section requires that the minimum competitive area be "a bureau, major command, directorate or other equivalent major subdivision of an agency within a local commuting area." *Id.*

This requirement replaced the previous regulation, which defined a competitive area as "all or that part of an agency in which employees are assigned under a single administrative authority" and further defined a departmental service competitive area as "a primary subdivision of an agency." *See* 5 C.F.R. § 351.402 (1983). OPM adopted the "new definition of what constitutes a minimum competitive area ... to provide agencies with better guidance." Reduction in Force, 51 Fed.Reg. 318, 318 (Office of Personnel Management 1986) (final rule).

Following the changes in the regulation, OPM revised the *Federal Personnel Manual* (*FPM*) to eliminate the "single administrative authority" language of the old regulation and the requirement that departmental service competitive areas be "large enough to permit adequate competition among employees." *Compare FPM Letter* 351–20 (Mar. 4, 1986) (New Interim FPM Chapter 351 on Reduction in Force) (superseded by *FPM Letter* 351–22 (Sept. 17, 1987)) *with FPM* 351–11 (1981). This revision defined departmental service competitive areas as those that are "separately organized and clearly distinguished from others in operation, work function, staff, and personnel administration." *FPM Letter* 351–20 (Mar. 4, 1986). The next revision retained this definition, but substituted "personnel management" for "personnel administration." It defined "personnel management" as "the *authority* to take or direct personnel actions, rather than the issuance or processing of the documents by which these decisions are effected." *FPM Letter* 351–22 (Sept. 17, 1987) (New Final FPM Chapter 351 on Reduction in Force) (emphasis in original) (superseded by *FPM Supplement* 351–1 (Sept. 18, 1989)). Before completely abolishing the *FPM*, OPM equated the authority to take or direct personnel actions with "the authority to establish positions, abolish positions, assign duties, etc." *FPM Supplement* 351–1, S3–2(c)(3) (Sept. 18, 1989) (provisionally retained until December 31, 1994).

Although the *FPM* was not in effect at the time of the OCAS RIF, it was when OPM promulgated the "competitive area" regulation at issue here. Furthermore, we have previously found the *FPM* instructive in construing the meaning of "competitive area." *See Grier v. Department of Health & Human Servs.*, 750 F.2d 944, 946–47 (Fed.Cir. 1984). Until OPM publishes another interpretation of the RIF regulations, the *FPM* remains a valuable resource for that purpose. Therefore, we conclude that section 351.402(b) requires a separate departmental competitive area to be a bureau, major command, directorate, or other equivalent major subdivision that is separately organized and clearly distinguished from others in operation, work function, staff, and personnel management, the latter of which is satisfied if the head of the subdivision has the authority to take or direct personnel actions (i.e., the authority to assign duties, establish or abolish positions, etc.).

Markland argues that the crucial factor for determining whether the head of an agency subdivision has the authority to take or direct personnel actions is whether he has appointing authority. Neither the regulation nor the abolished *FPM* discuss appointing authority. Similarly, the cases binding on us have not relied upon appointing authority in evaluating competitive areas. *Bashein v. United States*, 150 Ct.Cl. 138, 279 F.2d 255, 257 (1960), for example, finds separate competitive areas based on the installations' separate command, management, and retention registers. *Finch v. United States*, 179 Ct.Cl. 1, 5 (1967), relies on only the organizational structure of the agency and its analogous relationship to a bureau. The cases that do consider appointing authority are board cases, which are not binding here. *See, e.g., Tuggle v. Consumer Prod. Safety Comm'n*, 20 M.S.P.R. 100, 102 (1984) (upholding a competitive area because the "Commissioner of the agency was empowered by statute to exercise administrative authority in the appointment and supervision of the personnel on his or her immediate staff").

■ We are not persuaded that heads of competitive areas must have appointing authority in order for these competitive areas to be separate in personnel management. Section 351.402(b) requires only that subdivision heads have the authority to take or direct personnel actions (i.e., the authority to

assign duties, establish or abolish positions, etc.). Evidence of appointing authority may indicate that a subdivision head has authority to take or direct personnel actions, but it is not required.

■ OPM argues that it correctly designated OCAS as a separate departmental service competitive area because it is a major subdivision that is separately organized and clearly distinguished from others in operation, work function, staff, and personnel management. The parties do not dispute and the record shows that OCAS was separately organized and clearly distinguished in operation, work function, and staff.

As for personnel management, the record shows that the head of OCAS had the authority to take or direct personnel actions (i.e., the authority to assign duties, establish or abolish positions, etc.). The Revised Delegations state that the head of OCAS is "responsible for overall effective personnel management within [OCAS]." They allow the head of OCAS to approve leave without pay, alternative work schedules, and quality step increases, but not to authorize hazardous weather dismissals or set pay. The Revised Delegations also allow the head of OCAS, Furman, to approve intra-agency details. Furman stated, moreover, that he developed performance review standards for Markland, which were based on Markland's duties. This evidence shows that Furman could assign duties and had supervisory authority.

Significantly, the Revised Delegations state that the head of OCAS could "take position classification actions and establish or abolish subordinate positions within [his] organization ... if delegated by agreement from the Director, Office of Human Resources and EEO." Although there is no evidence in the record of a written agreement to that effect, Tyrrell stated by affidavit that Furman "had authority to abolish positions in Mr. Markland's competitive area." Moreover, Furman declared that he "made a management decision to abolish approximately forty positions in OCAS as a result of OPM's budget shortfall.... The budget reduction was the sole reason that [he] eliminated positions...." Substantial evidence supports the conclusion, therefore, that Furman had authority to abolish positions.

The evidence that the head of OCAS had authority to review employees, grant quality step increases, set schedules, assign duties, and abolish positions is sufficient to establish that he had authority to take or direct personnel actions and that OCAS' personnel management is distinguished from that of other subdivisions. Therefore, OPM has met its burden of producing evidence that OCAS is a separate departmental service competitive area under 5 C.F.R. § 351.402(b).

■ Upon meeting its initial burden of production, the agency enjoys a strong presumption that its officers acted in good faith and otherwise in accordance with law in conducting the RIF, see *Dancy v. United States*, 229 Ct.Cl. 300, 668 F.2d 1224, 1226 (1982), and the burden shifts to the aggrieved employee to rebut this presumption with clear and convincing evidence, see *George v. United States*, 166 Ct.Cl. 527, 531 (1964) ("In the absence of clear evidence to the contrary, it must be presumed that the officials of the [agency] acted properly in effecting the plaintiff's separation from the service.").

■ Stripped of his arguments that Furman did not have appointing or personnel authority, Markland supports his claim that OPM incorrectly defined his competitive area with no evidence except the existence of the fifteen competitive areas, which are smaller than those existing before OPM's reorganization. Size alone, however, does not show that OPM incorrectly established Markland's competitive area. See *Ginnodo v. Office of Personnel Management*, 753 F.2d 1061, 1063–64 (Fed.Cir.1985) (upholding a competitive area of one). Therefore, we see no basis for reversing the board's decision that OPM properly established OCAS as a separate competitive area.

■ Markland also argues that even assuming OPM properly designated OCAS as a competitive area, his separation was improper because his transfer from OIT to OCAS was retaliatory. Substantial evidence supports the board's finding to the contrary. Markland's only evidence of this conspiracy

is his own affidavit. A comparison of Markland's affidavit with those of other OPM employees, including Tyrrell, Furman, and Sutton, shows that he was neither transferred nor removed in retaliation. Assuming that Sutton intended to orchestrate a transfer to increase the likelihood that Markland would be separated in a RIF, the record establishes that Sutton could not have known that OCAS would conduct the RIF that separated him. Tyrrell stated that she conducted only one cost model and showed this only to Furman, not to Sutton. Furman stated, moreover, that when Markland was transferred into OCAS, his position was not targeted for a RIF, and he abolished Markland's position for no reason other than budget constraints.

### B. *Discovery*

 We will not overturn the board on procedural matters relating to discovery "unless an abuse of discretion is clear and is harmful." *Curtin v. Office of Personnel Management*, 846 F.2d 1373, 1378 (Fed.Cir. 1988). Markland must show, therefore, that not only did the board abuse its discretion in sustaining the AJ's discovery rulings, but that he was prejudiced by the partial denial of his motions to compel. *See id.* at 1379. The board determined that he was not prejudiced because he received a variety of documents and interrogatory answers, which provided him relevant information; and other avenues for discovery were open to him, which he chose not to take.

The interrogatories and document requests denied by the AJ relate to competitive areas other than OCAS, the success of Markland's alleged cost-cutting suggestions, and challenges by others to the RIF. These requests are either too broad or not relevant to Markland's case. Therefore, the board correctly held that denying them was not an abuse of discretion. Furthermore, we are simply unable to determine from this record whether denying his discovery requests caused him prejudice because he abandoned all other attempts to develop his case. We cannot say the board was wrong on this score either.

### *Conclusion*

Accordingly, the decision of the Merit Systems Protection Board is affirmed.

*AFFIRMED.*