Richard J. O'BRIEN, Petitioner,

v.

OFFICE OF PERSONNEL
MANAGEMENT,
Respondent.

No. 97–3415.

United States Court of Appeals,
Federal Circuit.

May 21, 1998.

Rehearing Denied; Suggestion for
Rehearing In Banc Declined
July 24, 1998.

Kevin M. Grile, Assistant General Counsel, American Federation of Government Employees, AFL–CIO, of Chicago, Illinois, argued for petitioner. With him on brief were Mark D. Roth, General Counsel, and Charles A. Hobbie, Deputy General Counsel, of Washington, DC.

Katherine M. Kelly, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Dept. of Justice, of Washington, DC, argued for respondent. With her on brief were Frank W. Hunger, Assistant Attorney General David M. Cohen, Director, and James Kinsella, Assistant Director. Of counsel on brief were Lorraine Lewis, General Counsel, and Barbara Mathews Beck, Office of General Counsel, Office of Personnel Management, of Washington, DC.

Before RADER, SCHALL, and BRYSON, Circuit Judges.

BRYSON, Circuit Judge.

The Office of Personnel Management ("OPM") separated petitioner Richard J. O'Brien from his position with the agency following a reduction in force. Mr. O'Brien appealed, and the Merit Systems Protection Board sustained his removal. Mr. O'Brien argues that he was not placed in a proper "competitive area" and that he was therefore denied an opportunity to compete for retention during the reduction in force. We conclude that substantial evidence supports the decision of the administrative judge that Mr. O'Brien was placed in a proper competitive area and that Mr. O'Brien's competitive area, although small, was lawfully constituted under the pertinent statute and regulations. We therefore affirm.

I

Mr. O'Brien was employed as a management analyst in the Federal Quality Institute ("FQI"), a subdivision of OPM. FQI was the office responsible for implementing Total Quality Management principles within the government. Mr. O'Brien's role at FQI was to direct the President's Quality Award Program, a competitive program that recognized superior efforts by federal agencies in applying those principles. As of 1995, Mr. O'Brien had a total of 41 years of government service, including five years at FQI.

FQI was adversely affected by proposed cutbacks in OPM's budget for fiscal year 1996. Congress's proposed budget sharply reduced OPM's allocation and eliminated all funding for FQI. In July 1995, OPM determined that the proposed budget cuts would require consolidation of certain agency func-

tions and a reduction in force. FQI was slated to be abolished and its principal duties transferred to the Office of Executive Resources, another subdivision within the agency.

Before 1995, FQI and several other subdivisions of OPM had been grouped together as part of the "Office of the Director," which was designated as a single competitive area. The significance of that designation is that, in the event of a reduction in force, employees compete for retention with other employees in their competitive area whose job classifications place them in the same competitive level. *See* 5 C.F.R. part 351. In general, the larger an employee's competitive area, the better the employee's chances of retention in case of a reduction in force.

In early 1995, OPM conducted an internal reorganization. Following the reorganization, employees in OPM's headquarters operations were grouped into 15 competitive areas. FQI became a separate competitive area, although it had only nine employees. The effect of the new classification was that FQI employees were not permitted to compete with other OPM employees for retention during the reduction in force. Because FQI was abolished in its entirety, Mr. O'Brien and the other FQI personnel were all separated effective September 29, 1995.

Mr. O'Brien appealed his separation to the Merit Systems Protection Board. Before the administrative judge, he argued that the reduction in force was unnecessary, that he was denied "transfer of function" rights when his duties were shifted to the Office of Executive Resources, that OPM had improperly designated FQI as a single competitive area, and that his separation was the result of age discrimination by the agency. The administrative judge rejected each of those arguments and sustained Mr. O'Brien's separation. The full Merit Systems Protection Board denied Mr. O'Brien's petition for review. Vice Chair Slavet, however, dissented from the denial of the petition. In her dissenting opinion, Vice Chair Slavet focused on the competitive area issue, explaining that in her view FQI could be a proper competitive area only if the head of FQI possessed "appointing authority." *O'Brien v. Office of Personnel Management,* 75 M.S.P.R. 300, 307 (1997). Because Vice Chair Slavet found no evidence in the record attributing such authority to the head of FQI, she would have reversed Mr. O'Brien's separation.

On appeal, Mr. O'Brien raises only his challenge to the designation of FQI as a separate competitive area. Adopting the reasoning of Vice Chair Slavet's dissent, Mr. O'Brien argues that OPM did not satisfy its burden to prove that the head of FQI possessed appointing authority, and that FQI therefore did not have sufficient independence to qualify as a separate competitive area. Mr. O'Brien also argues that FQI was not a proper competitive area because its small size precluded any competition for retention during the reduction in force.

## II

■ OPM asserts that the court should refuse to consider the merits of Mr. O'Brien's appeal because he failed to present his argument concerning appointing authority to the administrative judge. Although Mr. O'Brien's legal arguments have evolved throughout his appeal, he has consistently challenged the scope of his competitive area. That Mr. O'Brien has chosen to formulate his proposed legal test as turning on "appointing authority" does not alter the basic issue on appeal, which is whether OPM satisfied its legal burden to demonstrate that FQI is a proper competitive area. *See Yee v. City of Escondido,* 503 U.S. 519, 534–35, 112 S.Ct. 1522, 118 L.Ed.2d 153 (1992). We therefore conclude that Mr. O'Brien has preserved for review the issue of the scope of his competitive area, and we turn to whether substantial evidence supports the administrative judge's conclusion that OPM satisfied its burden of proof on that issue.

## III

■ During a reduction in force, federal employees may compete for retention based

on tenure of employment, military preference, length of service, and efficiency or performance ratings. *See* 5 U.S.C. § 3502(a). Employees may compete for retention, however, only with employees in the same competitive area. *See Grier v. Department of Health & Human Servs.*, 750 F.2d 944, 945 (Fed.Cir.1984). Retention competition is limited to competitive areas in order to minimize disruption in the operation of government agencies following a reduction in force. *See Bashein v. United States*, 150 Ct.Cl. 138, 279 F.2d 255, 257 (1960).

■ OPM has promulgated regulations instructing agencies on how to define their competitive areas. Under the regulations in effect when OPM conducted its reduction in force, the minimum permissible competitive area for a headquarters operation was a "major subdivision" of the agency. *See* 5 C.F.R. § 351.402(b) (1995). This court has recently interpreted that language, in accordance with OPM's own administrative manuals, to require that a minimum competitive area be "separately organized and clearly distinguished from others in operation, work function, staff, and personnel management." *Markland v. Office of Personnel Management*, 140 F.3d 1031 (1998). The personnel management requirement is satisfied if the head of the subdivision has the authority to take or direct personnel actions, including the ability to assign duties and to establish or abolish positions. *See id.*

■ OPM was required to show by a preponderance of the evidence that it correctly designated FQI as a separate competitive area. *See Wilburn v. Department of Transp.*, 757 F.2d 260, 262 (Fed.Cir.1985). The record supports the administrative judge's findings that FQI was distinct from other subdivisions in terms of operation, work function, and staff, and Mr. O'Brien has not challenged those findings on appeal. The issue on which he focuses is whether the head of FQI possessed sufficient personnel management authority to render FQI a major subdivision of OPM. The administrative judge found that OPM had satisfied its bur-

den on that issue. Our review is limited to assessing whether that decision is supported by substantial evidence. *See* 5 U.S.C. § 7703(c).

■ Substantiality of evidence is reviewed on the entire record, taking into consideration both the evidence that supports the factfinder's decision and the evidence that "fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456 (1951). Substantial evidence requires "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 477, 71 S.Ct. 456; *see Dixon v. Department of Transp.*, 8 F.3d 798, 804 (Fed.Cir.1993).

Our review in this case is complicated by the paucity of evidence introduced by either side regarding the propriety of OPM's designation of FQI as a separate competitive area. While Mr. O'Brien's discovery requests and written pleadings clearly raised the issue, he introduced no evidence to support his contention that FQI was improperly designated as a separate competitive area, nor did his representative question agency personnel on the issue at the hearing. The agency also gave the competitive area issue short shrift at the hearing, preferring to concentrate on other issues that appeared at that time to be more central to Mr. O'Brien's case.

■ Mr. O'Brien argues first that because OPM did not prove that the head of FQI had "appointing authority," substantial evidence does not support the administrative judge's conclusion that FQI was a valid competitive area. That argument has already been rejected by the court in *Markland* insofar as it pertains to the formal power to process appointments and separations. While formal appointing authority may be an indicator of personnel management authority, it is not required to establish a valid competitive area. *See Markland*, 140 F.3d 1031

In concluding that FQI was a proper competitive area, the administrative judge relied on the declaration and testimony of Penelope

Oland, a Senior Personnel Management Specialist at OPM. Ms. Oland was asked if she knew how the FQI competitive area was established. She responded that as part of an agency redesign, "a review was made of all the competitive areas in the agency" in February 1995. As a result of that review, she testified, any offices that had "full delegated personnel management authorities" were designated as separate competitive areas. Her declaration was to the same effect, stating that "FQI was made a single competitive area to be consistent with OPM's policy that central office organizations with full personnel authorities constitute a single competitive area."

Ms. Oland did not elaborate on the meaning of the term "full delegated personnel management authorities" or "full personnel authorities." Nor did her testimony or her declaration contain any specific discussion of the scope of authority granted to the head of FQI regarding personnel matters. Nonetheless, the administrative judge noted that Mr. O'Brien had "provided no evidence to refute the agency's sworn testimony and evidence that the agency's defined competitive areas were proper." In effect, the administrative judge held that the agency had established a prima facie case that was sufficient in the absence of any rebuttal. *See Schapansky v. Department of Transp.*, 735 F.2d 477, 482–83 (Fed.Cir.1984).

We hold that Ms. Oland's testimony and declaration satisfy the substantial evidence standard, although we regard the issue as a close one. By choosing to offer only the sparest account of why FQI was made a separate competitive area, the government flirted with the line between the presentation of probative evidence and the use of a witness simply to state a legal conclusion. Had Mr. O'Brien sought to challenge Ms. Oland's testimony, either by questioning her basis for knowledge or offering some reason to doubt the correctness of her assertion that the offices that were designated as separate competitive areas had "full delegated personnel management authorities," we might have found her testimony not to constitute sub-

stantial evidence that FQI was a properly constituted competitive area. But Ms. Oland's testimony on that issue was unchallenged and unrebutted, and in light of the absence of contrary evidence, we find it sufficient to sustain the administrative judge's ruling.

Although before the Board Mr. O'Brien offered nothing to undermine the government's evidence on the competitive area issue, on appeal he seeks to blunt the force of that evidence by pointing to the Revised Delegation of Authorities (the "Delegation") from the Director of OPM dated March 17, 1995, which was in the administrative record. The Delegation addresses the specific powers and duties of office heads (including the head of FQI) with respect to personnel management, making it particularly relevant to the issue in this case. The cover letter accompanying the Delegation states that it was prepared in response to the February 1995 agency redesign.

The Delegation gives office heads the authority to "request approval of personnel actions," and states that the Director of the Office of Human Resources and Equal Employment Opportunity ("OHR") is to "serve as final approval authority for personnel actions." Mr. O'Brien argues that this distribution of responsibilities demonstrates that the head of FQI could not exercise personnel management authority of the type envisioned by the competitive area regulation, because any such actions were effective only if approved by the Director of OHR. OPM responds by arguing that the "final approval authority" vested in OHR is merely the type of ministerial "appointing authority" we have already rejected as a basis for contesting a competitive area.

Another portion of the Delegation states that "Heads of Other Offices" may establish or abolish positions within their organizations only "if delegated [that authority] by agreement from the Director, Office of Human Resources and EEO." There was no evidence before the Board of any specific delegation from the Director of OHR to the head of FQI

regarding the authority to establish and abolish positions.

The problem with Mr. O'Brien's reliance on those portions of the Delegation is that he offered no evidence before the Board regarding their meaning. As a result, the administrative judge had no basis on which to determine that the reference to OHR's "final approval authority" contemplated a substantive role for OHR in the exercise of personnel management authority, rather than a merely ministerial "appointing" role. There was likewise nothing in the record from which the administrative judge could conclude that the requirement of delegated authority from OHR to create and abolish positions was a new requirement, rather than simply a restatement of the preexisting practice within the agency. Accordingly, the Delegation, standing by itself, did not undermine the force of Ms. Oland's testimony that the head of FQI had "full delegated personnel management authorities" and that FQI was designated as a separate competitive area for that reason. Indeed, the fact that FQI was not formally designated as a competitive area until after the promulgation of the Delegation—together with Ms. Oland's testimony that it was the policy of OPM to designate as separate competitive areas all offices with "full delegated personnel management authorities"—supports OPM's argument that the Delegation did not withdraw personnel authority previously possessed by the head of FQI. In sum, while the evidence offered by OPM regarding the competitive area issue is minimal, we conclude that it is sufficient to satisfy the "substantial evidence" standard in light of the absence of any contrary evidence from Mr. O'Brien.

IV

■ In addition to his challenge to the sufficiency of the evidence supporting the designation of FQI as a separate competitive area, Mr. O'Brien makes the broader claim that the selection of FQI as a competitive area was contrary to 5 U.S.C. § 3502, the statute that governs the order of retention for employees in a reduction in force.

Section 3502 requires OPM's retention regulations to give "due effect" to tenure of employment, military preference, length of service, and efficiency or performance ratings. Mr. O'Brien argues that the statute must be interpreted to provide that "at some level and to some degree, there must be competition for retention in a reduction in force." Because Mr. O'Brien's entire competitive area was abolished, he was not able to compete with any other employees for retention. He argues that, at least in the circumstances of this case, the lack of any opportunity for him to compete for retention violated the principles underlying section 3502.

Mr. O'Brien acknowledges that there are situations in which members of a competitive area will not be able to compete for retention. For example, a competitive area may consist of a large subdivision of an agency or all employees of a regional office of an agency in a particular commuting area; if the subdivision or the regional office is abolished, all employees in the competitive area are subject to removal, and none will be entitled to compete for retention. Moreover, where circumstances require that a competitive area be small, Mr. O'Brien acknowledges that an employee may lawfully be denied the opportunity to compete for retention because of the small size of his competitive area. *See Ginnodo v. Office of Personnel Management,* 753 F.2d 1061 (Fed.Cir.1985) (upholding removal of employee in a one-person competitive area over objection that he should have been allowed to compete for retention with employees in other competitive areas). Mr. O'Brien's argument, in essence, is that OPM's only stated reason for making FQI a separate competitive area was that it was OPM's policy to make separate competitive areas of each subdivision of the agency with full personnel management authorities. That policy, according to Mr. O'Brien, is not a sufficiently compelling justification to override the statutory preference in favor of competition for retention, particularly in this case where FQI had previously been part of a larger competitive area and was made its

own competitive area shortly before it was abolished.

It is true that FQI was a very small competitive area, and that the smaller an employee's competitive area the poorer the employee's chances to compete successfully for retention in the event of a reduction in force. Nonetheless, there is nothing in the statute or its implementing regulations that guarantees competition. *See Ginnodo,* 753 F.2d at 1063 ("[W]hile the regulations promulgated pursuant to 5 U.S.C. § 3502 create retention rights among competing employees in a competitive area, they do not guarantee that there will be positions for which employees may compete."); *Grier,* 750 F.2d at 945 ("We have found no statute, regulation or case law which requires an agency to expand a competitive area for the sole purpose of providing actual competition for a job."). Section 3502 merely requires the regulations to "give due effect" to the factors of tenure, length of service, military preference, and performance ratings. The OPM competitive area regulations do just that, by using those factors to determine the rankings of employees within each competitive area and competitive level. And the OPM regulations limit the extent to which agencies can reduce the size of their competitive areas: in the agency's headquarters operation, the competitive areas must constitute at least a "bureau, major command, directorate, or other equivalent major subdivision" of the agency. 5 C.F.R. § 351.402(b) (1995).

Mr. O'Brien contends that a unit such as FQI, with only nine employees, cannot reasonably be considered a "major" subdivision of an agency with approximately 2000 employees in its headquarters operation. But he does not suggest any criterion for determining how many employees would be required to constitute a "major" subdivision. OPM's functional definition of what constitutes a "major subdivision" of an agency—a unit that is separately organized and clearly distinguished from others in operation, work function, staff, and personnel management—represents a reasonable accommodation of the interest in promoting retention competition and the need for retaining flexibility for governmental organizations that differ greatly in size and structure.

Mr. O'Brien cites the opportunity for manipulation that is presented by interpreting the OPM regulations to permit competitive areas to be designed in accordance with the organizational independence of subdivisions within an agency. Although it is true that under the OPM regulations an agency can decentralize its operations and create multiple competitive areas if it wishes to do so, we think it unlikely that an agency would choose an organizational scheme for the sole purpose of enabling it to designate small competitive areas and deny employees the opportunity to compete for retention in the event of a reduction in force. In any event, OPM's competitive area regulation does not violate the statutory mandate in section 3502, which gives OPM broad discretion in formulating its retention regulations, and the selection of FQI as a separate competitive area did not violate any requirement of the OPM regulations. We therefore uphold the administrative judge's determination that FQI was validly made a separate competitive area within OPM.

*AFFIRMED.*