**J. Patrick HEELEN, Petitioner,**

v.

**DEPARTMENT OF COMMERCE, Respondent.**

**No. 97–3413.**

United States Court of Appeals, Federal Circuit.

Aug. 28, 1998.

J. Patrick Heelen, of Crofton, Maryland, petitioner, pro se.

Andrea I. Kelly, Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, argued for respondent. With her on the brief were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, and James M. Kinsella, Assistant Director. Of counsel was Joseph A. Kijewski, Attorney. Of counsel on the brief was William A. Biglow, Senior Counsel, Office of the General Counsel, Employment Labor Law Division, U.S. Department of Commerce, of Washington, DC.

Before PLAGER, Circuit Judge, FRIEDMAN, Senior Circuit Judge, and RADER, Circuit Judge.

RADER, Circuit Judge.

J. Patrick Heelen was an attorney in the Office of the General Counsel (OGC) of the Department of Commerce (Department). On February 29, 1996, the Department notified Mr. Heelen of its plans to abolish his position as part of a reorganization of OGC. On May 24, 1996, the Department eliminated Mr. Heelen's position. Because he was in the excepted service, Mr. Heelen had no assignment rights and was removed. He appealed his removal to the Merit Systems Protection Board (Board). Because the Department did not provide substantial evidence that OGC properly conducted the reduction in force, this court reverses.

## I.

The Census Bureau (Bureau) is part of the Economics and Statistics Administration (ESA) in the Department. The Bureau conducts surveys to obtain information about America and the American people. The best known Bureau survey is the decennial census. Because this decennial census influences the allocation of political representation and federal funds, the Bureau is frequently sued by parties who are dissatisfied with survey results. These parties challenge the results of, and the methods used in, the census.

These lawsuits affect the work of OGC. One of OGC's divisions, the Office of the Chief Counsel for the ESA, advises the Bureau on compliance with statutes that protect the confidentiality of census data and govern

Bureau administration. The Office of Chief Counsel also helps the Department of Justice defend the Bureau in legal challenges to census results and methods.

In the early 1990s, Mr. Heelen worked in the Office of Chief Counsel as Deputy Chief Counsel for the Bureau. From his office in Suitland, Maryland, he worked with the Department of Justice attorneys who were defending then-Secretary Robert Mosbacher's decision not to use statistical sampling techniques to adjust the results of the 1990 census. Mr. Heelen had previously participated in litigation stemming from the 1970 and 1980 censuses.

In 1994, Ginger Lew assumed her duties as General Counsel for the Department of Commerce and James K. White assumed his duties as Chief Counsel for ESA. Mr. White transferred Mr. Heelen into the downtown Washington office to assist with Census Bureau matters. Later that year, the Second Circuit decided that Secretary Mosbacher's decision declining to adjust the 1990 census had been improper. *See City of New York v. United States Dep't of Commerce*, 34 F.3d 1114 (2d Cir.1994), *rev'd sub nom. Wisconsin v. City of New York*, 517 U.S. 1, 116 S.Ct. 1091, 134 L.Ed.2d 167 (1996). Mr. White and his subordinates, including Mr. Heelen, spent the next year developing and presenting a new litigation strategy for future census litigation. In recognition of this work, Ms. Lew nominated Mr. White and his team, including Mr. Heelen, for a Department award.

In early 1995, the Department became concerned that Congress might cut its budget. Anticipating the possibility of cut-backs in personnel, the head of OGC's personnel decisions reviewed personnel records. Because most of the position descriptions were not current, she started working with managers in OGC to update these records. As part of this process, OGC established a uniform format for position descriptions. The majority of each description consisted of language from a common form. Each description concluded with a short paragraph describing that position's unique requirements.

In May 1995, Mr. White asked Kathleen Styles, an attorney with whom he had previ-

ously worked, to join his staff. Like Mr. Heelen, Ms. Styles occupied a GS–15 position. In August 1995, Mr. White directed Mr. Heelen, Ms. Styles, and Philip Freije, the third GS–15 attorney in his office, to revise their position descriptions. After Mr. White reviewed the draft position descriptions, he directed Ms. Styles to further revise the "Unique Position Requirements" portion of the position descriptions. In particular, he instructed Ms. Styles to emphasize litigation in her position description and to minimize litigation in Mr. Heelen's position description.

In late 1995 or early 1996, Ms. Lew decided that a shortage of funds necessitated a reduction in force (RIF) in OGC. On February 29, 1996, Mr. Heelen received notice that his position had been selected for elimination. Mr. Heelen retired from federal service on May 24, 1996, the effective date of the RIF.[1] Mr. Heelen challenged the RIF procedures. After a hearing, an administrative judge sustained the RIF. *See Heelen v. Department of Commerce*, No. DC–0351–96–0860–I–1 (Oct. 18, 1996). On appeal, the full Board sustained the judgment of the administrative judge. *See Heelen v. Department of Commerce*, 75 M.S.P.R. 366 (M.S.P.B. 1997). Mr. Heelen now appeals.

## II.

■ This court reviews Board decisions by applying statutory standards. Accordingly, this court can only disturb the Board's decision if it is arbitrary, capricious, an abuse of discretion, not in accordance with law, obtained without procedures required by law, or unsupported by substantial evidence. *See* 5 U.S.C. § 7703(c) (1994). In reviewing a Board decision for substantial evidence, this court examines the entire record, "taking into consideration both the evidence that supports [the Board's] decision and the evidence that fairly detracts from its weight."

1. The Board determined that Mr. Heelen's election of retirement did not affect his right to appeal. *See Heelen v. Department of Commerce,* 75 M.S.P.R. 366, 368 n.* (1997). The Board relied upon statutory language that provides that "neither an individual's status under any retirement system established by or under Federal statute nor any election made by such individual under any such system" can affect the appealability of a removal from federal service. 5 U.S.C.

*O'Brien v. Office of Personnel Management,* 144 F.3d 1458, 1461 (Fed.Cir.1998) (internal quotation marks omitted).

■ Although enjoying wide discretion in conducting a RIF, *see Gandola v. Federal Trade Comm'n,* 773 F.2d 308, 313 (Fed.Cir. 1985), an agency nonetheless bears the burden of demonstrating its compliance with proper RIF procedures, *see* 5 U.S.C. § 7701(c)(2)(B) (1994); *see also Wilburn v. Department of Transp.,* 757 F.2d 260, 262 (Fed.Cir.1985) (explaining that an agency's "assertion of absolute discretion does not satisfy its burden under the facts of this case"); *Williams v. Tennessee Valley Auth.,* 24 M.S.P.R. 555, 557 (1984) ("When an agency undertakes a RIF, it has the burden of proving by a preponderance of the evidence that it properly invoked and applied the RIF regulations."); *Losure v. Interstate Commerce Comm'n,* 2 MSPB 361, 2 M.S.P.R. 195, 201 (1980). An employee has a substantive right to be placed in a properly determined competitive level during a RIF. *See Jicha v. Department of the Navy,* 65 M.S.P.R. 73, 76 (1994). Therefore, the agency must prove that it made a valid determination of the competitive levels used in the RIF. *See Disney v. Department of the Navy,* 67 M.S.P.R. 563, 567 (1995); *Speaker v. Department of Educ.,* 11 MSPB 430, 13 M.S.P.R. 163, 166 (1982). *See generally Wilburn,* 757 F.2d at 262 (explaining the agency's burden of proving that the RIF was properly conducted).

## III.

■ On appeal, Mr. Heelen asserts that substantial evidence does not support the Board's determination that the Department used proper competitive levels in this RIF. He specifically asserts that he should have been placed in the same competitive level as Ms. Styles, an attorney with less seniority.

§ 7701(j) (1994); *see also Pugh v. Defense Commissary Agency,* 65 M.S.P.R. 6, 10 (1994) (explaining that the statute "prevent[s] employees from having to choose between the exercise of their due process rights and retirement"). The Government neither challenges the Board's jurisdiction nor argues that Mr. Heelen's appeal to the Board was moot. At oral argument the Government conceded that Mr. Heelen's retirement was involuntary.

For this RIF, OGC placed Mr. Heelen, Ms. Styles, and Mr. Freije in separate one-person competitive levels. In the alternative, Mr. Heelen argues that, even if the Department did establish proper competitive levels, he should not have been removed because the RIF did not identify his position for elimination.

 Turning first to the competitive levels question, the governing regulation states:

(1) Each agency shall establish competitive levels consisting of all positions in a competitive area which are in the same grade (or occupational level) and classification series, and which are similar enough in duties, qualification requirements, pay schedules, and working conditions so that an agency may reassign the incumbent of one position to any of the other positions in the level without undue interruption.

(2) Competitive level determinations are based on each employee's official position, not the employee's personal qualifications.

5 C.F.R. § 351.403(a) (1995). Under this regulation, two positions are in the same competitive level if the incumbent of one can perform the duties of the other "without undue interruption." 5 C.F.R. § 351.403(a)(1); *see also Parkhurst v. Department of Transp.*, 70 M.S.P.R. 309, 312 (1996). "Undue interruption" means a loss of productivity beyond that caused by the orientation of a new, but fully qualified, employee. *See Parkhurst*, 70 M.S.P.R. at 312. Position descriptions are the primary determinant of whether positions are in the same competitive level. *See Simonton v. Department of the Army*, 62 M.S.P.R. 30, 35–36 (1994). The regulation makes the personal qualifications of the current incumbents of the positions irrelevant to competitive level determinations. *See* 5 C.F.R. § 351.403(a)(2).

 As noted earlier, OGC placed each of the GS–15 attorneys who worked for Mr. White in a separate competitive level. Although a competitive level with one person is not *per se* improper, *see, e.g., Gibson v. United States*, 176 Ct.Cl. 102 (1966) (sustaining RIF which used a one-person competitive level); *cf. Ginnodo v. Office of Personnel Management*, 753 F.2d 1061 (Fed.Cir.1985) (affirming RIF procedures that created a single-person competitive area), rarely will a position entail work that only the incumbent can perform without causing undue interruption to train a replacement. Indeed, the Government would be unwise to create positions which lacked interchangeability because the absence or departure of an employee for any reason would disrupt the functioning of the Government.

In this instance, the only evidence in the record justifying the one-person competitive levels in OGC's RIF is an unsigned document. The unsigned document conclusively states: "Each of the GS–15s [in Mr. White's office] should be in their own separate competitive level." The Department provides no reasoning for the conclusive directive in this document. In fact, the Department has not even identified the author of this memorandum. The personnel specialist who implemented the RIF testified that she did not know who wrote the document. The head of the OGC's personnel law division testified that she did not know who wrote the document or determined that each GS–15 attorney should fall into a separate level. She stated that only the chief counsel or the assistant general counsel in charge of a particular office could certify the proper competitive levels. Therefore, she assumed that Mr. White had made this determination. However, when asked, Mr. White denied that he had determined the competitive levels for positions in his office.

Unable to identify the author of the memorandum, the Department presented no evidence of the reasoning embodied in that document. Instead, the Department attempts to use the recently revised position descriptions as *post hoc* justification for the conclusion in the memorandum. The new position descriptions, according to the Department, show the correctness of placing Mr. Heelen, Ms. Styles, and Mr. Freije in separate competitive levels.

To the contrary, however, the position descriptions do not supply substantial evidence to show proper determination of the competitive levels. An examination of the process that produced the revised position descriptions shows that Mr. White decided to supply new position descriptions for the attorneys in

his office. He classified Mr. Heelen, Ms. Styles, and Mr. Freije as GS–15 General Attorneys and told them to prepare statements of their position's unique requirements. Mr. Heelen wrote:

Incumbent must have extensive knowledge of legal issues pertaining to all programs conducted by the Census Bureau, particularly the Decennial Census and the litigation generated by it. In addition, incumbent must have a thorough understanding of legal matters related to Census Bureau support operations, including field operations, security, data dissemination, and technology development. Expert knowledge of constitutional and programmatic law applicable to Census.

After receiving the drafts, Mr. White directed Ms. Styles to revise them. At his direction, Ms. Styles revised Mr. Heelen's unique position requirements to remove any references to litigation:

Extensive knowledge of law on all CB programs, particularly Decennial Census. Thorough understanding of field operations, security, data dissemination, and technology development. Expert on constitutional and programmatic census law.

Mr. White approved this revision. The agency's personnel specialist, however, noted that the position description was inadequate. To support a GS–15 General Attorney classification, Mr. Heelen's position description needed to indicate that he engaged in litigation. Accordingly, she added "Requires access to classified material. Performs litigation work" to the position description. Indeed, the Office of Personnel Management's Classification standards mandate that a GS–15 General Attorney perform highly complex litigation. The process of revising position descriptions at OGC does not show any consideration of whether an attorney in one position could perform the duties of another position without "undue interruption." Rather this process supports the inference that the position descriptions were manipulated in an attempt to create artificial distinctions between the positions occupied by the attorneys working for Mr. White.

In any event, to show that OGC properly placed Mr. Heelen and Ms. Styles in separate competitive levels, the Department must show that a person qualified to perform Mr. Heelen's position could not assume Ms. Styles's position "without undue interruption." 5 C.F.R. § 351.403(a)(1). After revision in accordance with Mr. White's instructions, the unique requirements portion of Ms. Styles's position description read:

Senior Counsel. Legal advice and representation to ESA on decennial census/other census operations, STAT–USA, and other BEA and Census Bureau activities. Works particularly on census litigation. Expert knowledge of complex federal litigation.

This court therefore turns to the Board's determination that the incumbent of Mr. Heelen's position would not be interchangeable with the incumbent of Ms. Styles's position without undue interruption. In comparing these position descriptions, this court notes the difficulty of comparing Mr. Heelen's job description—phrased in terms of knowledge required for the position—with Ms. Styles's—phrased in terms of duties performed. Nonetheless the overall duties of OGC provides an enlightening context for these descriptions. The only complex litigation performed by the Office of Chief Counsel for the ESA was litigation challenging the decennial census. Therefore, a position occupied by an "[e]xpert on constitutional and programmatic census law" who "[p]erforms litigation work" (Mr. Heelen's position) and a position occupied by an "[e]xpert … [in] complex federal litigation" (Ms. Styles position) would likely entail very similar work within the confines of OGC. Indeed Ms. Styles testified that each of the GS–15 attorneys could perform the duties of any other GS–15 attorney within that office. In sum, the Department provided little, if any, evidence that the incumbent within Mr. Heelen's job position could not acquire the skills to perform the job occupied by Ms. Styles without undue interruption. Without substantial evidence to support the Board's determination, this court reverses.

This court's ruling draws additional support from *Drake v. Department of Commerce*, 18 M.S.P.R. 475 (1983). In *Drake*, the Census Bureau revised the position descriptions of a group of Community Services Specialists (CSSs) before conducting a RIF. The new position descriptions reflected in greater detail the particular ethnic community with which each specialist worked. *See id.* at 477. For example, the CSS for the

Native American Community and the CSS for the Hispanic Community each had separate position descriptions. *See id.* The Bureau placed each CSS in a separate competitive level. Even though it admitted that a CSS for one community could work effectively with a different community, the Bureau maintained that switching a CSS from one position to another would cause undue interruption due to the time required for a new CSS to establish the community rapport and contacts. *See id.* Rejecting this argument, the Board affirmed an initial decision reversing the RIF. *See id.* at 479. In this case, as in *Drake,* the agency did not show that separate competitive levels were necessary to avoid undue interruption. Therefore, OGC has not shown that it complied with controlling regulations, and this court reverses the Board's determination.

▮ In addition, substantial evidence does not support the Board's decision that the Department properly terminated Mr. Heelen. Ms. Lew, the General Counsel, testified that she decided which positions in her office would be eliminated due to the shortage of funds. In making this decision, she did not rely upon any particular set of documents. Rather, she relied upon her own perception of the future needs of the OGC and the ESA.

The Board determined that "Ms. Lew believed that the position encumbered by [Mr. Heelen], which required an expert in programmatic census law, could be abolished given the budgetary constraints her organization faced." *Heelen,* slip op. at 5 (Oct. 18, 1996). The Board further found that Ms. Lew received input from Mr. White before making her decision. *See id.* These findings, however, conflict with the overall record and therefore are not supported by substantial evidence.

In her testimony, Ms. Lew described the process she used to reach her decision. She testified that she had a meeting with Mr. White. According to Ms. Lew, at this meeting they discussed the GS–15 attorneys in his office and identified the particular functions each was performing. Ms. Lew testified that she and Mr. White reached a meeting of the minds to eliminate Mr. Heelen's position. Mr. White, on the other hand, testified that

Ms. Lew informed him of her decision to eliminate Mr. Heelen's position in a meeting that "lasted all of about a minute." The choice between Ms. Lew's and Mr. White's recollection of events is a credibility determination. The Board had broad discretion to credit Ms. Lew's testimony over Mr. White's. *See Hambsch v. Department of the Treasury,* 796 F.2d 430, 436 (Fed.Cir.1986).

However, reliance on Ms. Lew's testimony undercuts the Board's ultimate conclusion. Ms. Lew also testified that she had decided to eliminate the position in Mr. White's office that performed census litigation. Assuming that the unsigned memorandum properly described the competitive levels in Mr. White's office, this decision should have eliminated Ms. Styles's position. The memorandum described Ms. Styles's position as "Expert knowledge of census federal litigation." Mr. Heelen occupied the position for an "Expert on constitutional and programmatic census law."

Therefore, Ms. Lew's testimony is internally inconsistent. Ms. Lew testified both that she decided to eliminate Mr. Heelen's position and that she intended to eliminate the position occupied by Ms. Styles. Due to these internal inconsistencies, Ms. Lew's testimony cannot supply substantial evidence that she intended to eliminate the position occupied by Mr. Heelen.

## IV.

In this case, the Department did not supply substantial evidence that it properly placed Mr. Heelen, Ms. Styles, and Mr. Freije in separate competitive levels or that Mr. Heelen's position had been selected for elimination in the RIF. Because substantial evidence does not support the Board's decision, this court need not address the other arguments raised in Mr. Heelen's appeal. The Board's decision is reversed.

### COSTS

Costs to Mr. Heelen.

*REVERSED.*