**Robert F. BARON, Petitioner,**

v.

**DEPARTMENT OF THE INTERIOR, Respondent.**

No. 03–3098.

United States Court of Appeals, Federal Circuit.

DECIDED: May 12, 2003.

Rehearing Denied June 4, 2003.

---

Before MICHEL, LOURIE, and GAJARSA, Circuit Judges.

PER CURIAM.

Robert F. Baron petitions for review of a final decision of the Merit Systems Protection Board ("Board"), *Baron v. Dep't of the Interior,* SF–0351–02–0208–I–1 (MSPB, Nov. 22, 2002), upholding the Department of Interior ("agency") decision to invoke the reduction-in-force ("RIF") regulation and abolish Mr. Baron's GS–6 Reclamation Guide position. After reviewing Mr. Baron's arguments, we conclude that there is substantial evidence to support the Board findings that (1) the agency had legitimate business reasons to conduct the RIF; and (2) the legitimacy was not affected by limited resumption of certain public tours months after a complete suspension of all tours for security reasons following the terrorist attacks of September 11, 2001. The Board decision is therefore *affirmed.*

## BACKGROUND

Mr. Baron worked as a GS–6 tour guide at the Hoover Dam, as an employee of the Department of Interior, Bureau of Reclamation. On September 11, 2001, all tours of the Hoover Dam were suspended. By letter dated October 12, 2001, the agency notified Mr. Baron that his position would be abolished via a RIF, explaining that the absence of tours had created a surplus of positions. The RIF was effective on January 4, 2002. Mr. Baron was offered, and he accepted, a position as a GS–5 Reclamation Guide. The dam reopened for limited public tours on December 12, 2001.

Mr. Baron appealed his downgrade under the RIF to the Board on January 8, 2002, claiming that his GS–6 position should not have been eliminated because tours later resumed at Hoover Dam. On May 8, 2002, the administrative judge ("AJ") found that the agency had undertaken the RIF for a legitimate management reason and in accordance with 5 C.F.R. § 351.201(a). The AJ also concluded that Mr. Baron had not established that his duties as a GS–5 Reclamation Guide were the same as his duties as a GS–6 Reclamation Guide. Further, the AJ found that the resumption of tours only on a limited basis, as of December 12, 2001, did not impact the legitimacy of the RIF, and that Mr. Baron did not demonstrate that his GS–6 position had been re-established. As a result, the AJ found no error in the agency's action.

The AJ decision became final when, on November 22, 2002, the Board denied Mr. Baron's petition for review. Mr. Baron timely appeals the Board decision.

## DISCUSSION

This court's review of a Board decision is limited. A Board decision must be sustained unless it is: "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c) (2000). Moreover, an agency is accorded "wide discretion in conducting a reduction in force; absent a clear abuse of that discretion, a substantial departure from applicable procedure, a misconstruction of governing statutes, or the like, we do not upset a final agency decision.'" *Markland v. Office of Pers. Mgmt.*, 140 F.3d 1031, 1033 (Fed.Cir.1998) (citation omitted).

■ Mr. Baron does not allege a misconstruction of governing statutes, nor do we see any. Neither do we see a substantial departure from applicable procedures or a clear abuse of discretion in the agency's RIF action. Mr. Baron seems only to argue that the Board decision is not supported by substantial evidence because some tours at the dam resumed on December 12, 2001. However, Ms. Linda Limneos, Director of Visitors Services at Hoover Dam, declared that management officials at Hoover Dam decided to conduct a RIF due to the impact of the events on September 11, 2001, on normal business operations of the Visitors Services. Ms. Limneos also testified that the facility had not returned to normal business operation since September 11, 2001. Thus, there is substantial evidence to support the Board finding that the RIF was invoked for legitimate management reasons, i.e., a lack of sufficient work following the cessation of tours at Hoover Dam after September 11, 2001. There is also substantial evidence to support the Board finding that while some tours resumed, they were of a more limited nature. Mr. Baron did not provide any evidence that tours resumed to the extent and volume they had before September 11, 2001.

■ Mr. Baron also contends that the government improperly cites as the reason for the RIF the elimination of "hard hat" tours,[1] while the RIF letter from the agency only referred to cessation of "guided tours." Mr. Baron further argues that he expected good faith action in his employer to recreate his GS–6 position. However, as we noted above, the record contains substantial evidence to support the Board finding that the legitimacy of the RIF was not affected by the limited resumption of tours. Additionally, the Board did not abuse its discretion in concluding that Mr. Baron's GS–6 Reclamation Guide position had not been re-established. Mr. Baron does not dispute the Board finding that the "hard hat" tours inside the power plant had been permanently modified to offer visitors only limited access to the dam, and that the essential function of the GS–6 tour guides was to provide tours of the dam itself, which function was no longer needed after the agency closed off public access to the dam due to security reasons.

---

1. Premium tours that took visitors to the areas of the Dam such as the power plant.